**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| SHELBI HINDEL, *et al.*, | * |
| Plaintiffs, | * |
| v. | *  Civil Action No. 2:15-cv-3061 |
| JON A. HUSTED, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Shelbi Hindel, Barbara Pierce, Marianne Denning, and the National Federation of the Blind, Inc. ("NFB") (collectively "Plaintiffs"), by their undersigned counsel, pursuant to Fed. R. Civ. P. 65(a) and 42 U.S.C. § 12101(b)(1), move the Court to issue a preliminary injunction against Defendant Jon A. Husted, in his official capacity as Ohio Secretary of State, prohibiting Mr. Husted from violating Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and requiring him to offer Plaintiffs in time for use in the March 15, 2016 presidential primary election: (1) a private and independent method of absentee voting; and (2) a voter services website that offers Plaintiffs all of the same information and the same transactions, with substantially equivalent ease of use.  The grounds for this motion are set forth in the attached Memorandum of Law and accompanying exhibits.

WHEREFORE, Plaintiffs request that their Motion be granted and that the Court issue a preliminary injunction against Defendant.

Respectfully submitted,

Respectfully submitted,
s/Jason C. Boylan
Jason C. Boylan (0082409), Trial Attorney
Kristen Henry (0082382)
DISABILITY RIGHTS OHIO
Ohio Disability Rights Law and Policy Center, Inc.
50 W. Broad Street, Suite 1400
Columbus, Ohio 43215-5923
Telephone: (614) 466-7264
Facsimile: (614) 644-1888
jboylan@DisabilityRightsOhio.org
khenry@DisabilityRightsOhio.org

Daniel F. Goldstein[*]
Jessica P. Weber[*]
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
dfg@browngold.com
jweber@browngold.com

*Counsel for Plaintiffs*

---

[*] *Pro hac vice* motions forthcoming

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**Eastern Division**

SHELBI HINDEL, *et al.*,                    *

      Plaintiffs,                            *

v.                                          *          Civil Action No. 2:15-cv-3061

JON A. HUSTED,                              *

      Defendant.                            *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Daniel F. Goldstein*
Jessica P. Weber*
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
dfg@browngold.com
jweber@browngold.com

Jason C. Boylan (0082409)
Kristen Henry (0082382)
Disability Rights Ohio
Ohio Disability Rights Law and Policy
Center, Inc.
50 W. Broad St., Suite 1400
Columbus, OH 43215
Tel: (614) 466-7264
Fax: (614) 644-1888
jboylan@disabilityrightsohio.org
khenry@disabilityrightsohio.org

*Counsel for Plaintiffs*

\* *Pro hac vice* motions forthcoming

{00233244-7}

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

STATEMENT OF FACTS ........................................................................................................2

I.     Absentee voting in Ohio ..............................................................................................2

II.    Accessible absentee voting systems.............................................................................4

III.   The Secretary of State's voter services website...........................................................6

IV.   The individual plaintiffs and their disabilities, use of assistive technology, and plans for voting ...........................................................................................................9

V.    The National Federation of the Blind. ....................................................................... 11

LEGAL STANDARD .............................................................................................................14

ARGUMENT ..........................................................................................................................14

        I.    Plaintiffs are likely to succeed on the merits of their ADA claim ........................14

               A.  Absentee voting ..................................................................................16

               B.  Voter services website .................................................................. 19

        II.   Plaintiffs are likely to suffer irreparable harm in the absence of preliminary Relief.....................................................................................................................21

        III.  The balance of equities tips decidedly in Plaintiffs' favor ...................................22

        IV.  An injunction is in the public interest .................................................................23

        V.   Although a bond should not be required here, Plaintiffs are prepared to post one if need be .................................................................................................24

CONCLUSION........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Council of the Blind v. Paulson*,
   525 F.3d 1256 (D.C. Cir. 2008) ....................................................................................17

*Am. Sys. Consulting, Inc. v. Devier*,
   514 F. Supp. 2d 1001 (S.D. Ohio 2007) ......................................................................24

*Burlington N.R.R. Co. v. Dep't of Revenue*,
   934 F.2d 1064 (9th Cir. 1991) ....................................................................................21

*California Council of the Blind v. Cnty. of Alameda*,
   985 F. Supp. 2d 1229 (N.D. Cal. 2013) ......................................................................17

*CSX Transp., Inc. v. Tennessee State Bd. of Equalization*,
   964 F.2d 548 (6th Cir. 1992) .......................................................................................21

*Deck v. City of Toledo*,
   29 F. Supp. 2d 431 (N.D. Ohio 1998)..........................................................................23

*Disabled in Action v. Bd. of Elections in City of New York*,
   752 F.3d 189 (2d Cir. 2014)........................................................................................17

*EEOC v. Chrysler Corp.*,
   733 F.2d 1183 (6th Cir. 1984) ....................................................................................21

*Jones v. City of Monroe, MI*,
   341 F.3d 474 (6th Cir. 2003) ................................................................................15, 23

*Martin v. Metro. Atlanta Rapid Transit Auth.*,
   225 F. Supp. 2d 1362 (N.D. Ga. 2002) ..................................................................19, 20

*Moltan Co. v. Eagle-Picher Indus., Inc.*,
   55 F.3d 1171 (6th Cir. 1995) ......................................................................................24

*Nat'l Fed. of the Blind v. HRB Digital LLC*,
   No. 1:13-cv-10799-GAO (D. Mass Mar. 25, 2014) ....................................................8

*Nat'l Fed.of the Blind v. Lamone*,
   No. 14-1631, 2014 WL 4388342 (D. Md. Sept. 4, 2014)............................................5, 16, 17

*Nat'l Org. on Disability v. Tartaglione*,
   No. Civ. A. 01-1923, 2001 WL 1231717 (E.D. Pa. Oct. 11, 2001)..........................17

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2012) ...................................................................14, 24

*Roth v. Bank of the Commonwealth*,
    583 F.2d 527 (6th Cir. 1978) ........................................................................24

*Sellers v. University of Rio Grande*,
    838 F. Supp. 2d 677 (S.D. Ohio 2012) .......................................................21

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) ........................................................................21

*Tennessee v. Lane*,
    541 U.S. 509 (2004).......................................................................................23

*Urbain v. Knapp Bros. Manuf. Co.*,
    217 F.2d 810 (6th Cir. 1954) ........................................................................24

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .......................................................................................... 14

**Statutes**
42 U.S.C. § 12102 .................................................................................................15

42 U.S.C. § 12131 ................................................................................................. 14

42 U.S.C. § 12132 ................................................................................................. 14

42 U.S.C. § 12188 .................................................................................................21

42 U.S.C. §§ 12101-12213 .....................................................................................1

42 U.S.C. §§1973ff ................................................................................................3

Ohio Rev. Code § 3509.02(A) ...............................................................................2

**Regulations**
28 C.F.R. § 35.130 .......................................................................................... *passim*

28 C.F.R. § 35.160 .......................................................................................... *passim*

28 C.F.R. § 35.164 ...............................................................................................19

**Other Authorities**

ACLU and Center for Accessible Technology, *Access Denied: Barriers to Online Voter Registration for Citizens with Disabilities* (Feb. 2015) .................................................................6, 7

*Elections/Voters/Candidates Publications*, Jon Husted, Ohio Secretary of State, http://www.sos.state.oh.us/SOS/publications.aspx#Elections (last visited Nov. 30, 2015)........6, 19

*Frequently Asked Questions: Absentee Voting*, Jon Husted, Ohio Secretary of State, http://www.sos.state.oh.us/sos/elections/Voters/FAQ/AbsenteeFAQs.aspx (last visited Nov. 24, 2015) ......................................................................................................................... 2-3

Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 142, 43464 (proposed July 26, 2010) *available at* http://www.gpo.gov/fdsys/pkg/FR-2010-07-26/pdf/2010-18334.pdf .....................................................................................................................19

Ohio Secretary of State Jon Husted, *2016 Ohio Elections Calendar*, *available at* http://www.sos.state.oh.us/sos/upload/publications/election/2016Election-Calendar12x18.pdf...................................................................................................4, 9, 14

*Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and Peapod, LLC Under the Americans with Disabilities Act*, DJ No. 202-63-169 (Nov. 17, 2014), *available at* http://www.justice.gov/file/163956/download ........................................................8

*Settlement Agreement Between the United States of America and EdX Inc. Under the Americans with Disabilities Act*, DJ No. 202-36-255 (April 2, 2015), *available at* http://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/04/02/edx_settlement_agreement.pdf ................................................. 8

*Settlement Agreement Between the United States of America and the National Museum of Crime and Punishment Under the Americans with Disabilities Act*, DJ No. 202-16-189 (Jan. 13, 2015), *available at* http://www.justice.gov/file/317596/download ......................................................... 8

*The Office: Secretary Husted*, Jon Husted, Ohio Secretary of State, http://www.sos.state.oh.us/sos/agency/secHustedRedBio/Biography.aspx (last visited Dec. 1, 2015)......................................................................................................................23

*Update Your Voter Registration Information*, Jon Husted, Ohio Secretary of State, https://olvr.sos.state.oh.us/ovru/Modify.aspx (last visited Nov. 30, 2015) ...............................6, 20

*Voting from Home: Voting Absentee by Mail*, Jon Husted, Ohio Secretary of State, http://www.sos.state.oh.us/sos/elections/Voters/votingAbsenteeByMail.aspx (last visited Nov. 25, 2015).....................................................................................................................3

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

SHELBI HINDEL, *et al.*,　　　　　　　　*

　　　　Plaintiffs,　　　　　　　　　　*

v.　　　　　　　　　　　　　　　　　*　　　　Civil Action No. 2:15-cv-3061

JON A. HUSTED,　　　　　　　　　*

　　　　Defendant.　　　　　　　　　*

*　*　*　*　*　*　*　*　*　*　*　*　*　*　*　*　*　*　*　*　*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

　　　　Plaintiffs Shelbi Hindel, Barbara Pierce, Marianne Denning, and the National Federation of the Blind, Inc. ("NFB") (collectively "Plaintiffs") bring this Motion for Preliminary Injunction against Defendant Jon A. Husted, in his official capacity as Ohio Secretary of State, to enjoin him from denying individuals with disabilities an equal opportunity to cast their votes by absentee ballot and to access the Secretary of State's voter services website in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.

　　　　First, Plaintiffs are likely to prevail on the merits of their claim because without an accessible method of absentee voting, Ms. Hindel, Ms. Pierce, Ms. Denning, and many other NFB members will lose the opportunity Ohio affords voters without disabilities: to vote absentee privately and independently.  In addition, Plaintiffs are likely to prevail on their claim that without access to the voter services website, they are denied an equal opportunity (1) to stay informed about the voting process; and (2) to obtain, complete, and submit required forms. Furthermore, Mr. Husted is unlikely to succeed in an affirmative defense of undue burden: at

{00233244-7}

least two accessible absentee voting systems are readily available at no cost and correcting the voter services website for accessibility is not particularly costly. Granting the requested relief also would not fundamentally alter Ohio's voting program or services.

Second, because Plaintiffs' civil rights are at stake in this litigation, Plaintiffs will suffer irreparable harm in the absence of a preliminary injunction. Third, the balance of the equities tips decidedly in Plaintiffs' favor because if Mr. Husted is not preliminarily enjoined, Ms. Hindel, Ms. Pierce, Ms. Denning, and many other NFB members will be denied an equal opportunity to vote absentee and obtain critical information from the voter services website for the March 15, 2016 presidential primary elections. Conversely, Mr. Husted will suffer little to no harm by adopting an accessible absentee voting system and correcting his website in advance of the March primary. Finally, the public interest will be served by enforcing the ADA's goal of creating equal opportunities for individuals with disabilities to participate in civic life and exercise their fundamental right to vote.

Accordingly, this Court should issue Plaintiffs a preliminary injunction and require Mr. Husted to offer an accessible method of absentee voting that allows blind voters to vote privately and independently and an accessible voter services website that meets widely accepted accessibility standards in time for use by blind voters in advance of the March 15, 2016 presidential primary elections.

## STATEMENT OF FACTS

### I. Absentee voting in Ohio

Ohio offers all registered voters the opportunity to vote by absentee ballot without the need to offer a reason or excuse. *See* Ohio Rev. Code § 3509.02(A)("Any qualified elector may vote by absent voter's ballots at an election."); *Frequently Asked Questions: Absentee Voting*,

Jon Husted, Ohio Secretary of State,

http://www.sos.state.oh.us/sos/elections/Voters/FAQ/AbsenteeFAQs.aspx (last visited Nov. 24,

2015) ("Any qualified Ohio voter whose registration information is up to date may request and

vote an absentee ballot without stating a reason.").  To request an absentee ballot, Ohio voters

must complete a form to be mailed or delivered to their local county board of elections.  The

Secretary of State makes the absentee ballot request form available on its website in a format that

may be filled out by a voter using a computer.  Barriers on the website, however, prevent a blind

Ohio voter using a computer from finding that form and from using her computer, with the aid of

screen access software,[1] to fill it out.  Rush Decl. ¶¶ 7-8; Decl. of Barbara Pierce ¶¶ 6-7, Dec. 4,

2015 ("Pierce Decl.").

      After Ohio election officials process a voter's absentee ballot request form, they mail a

voter who is not uniformed military personnel or an overseas civilian a paper absentee ballot to

complete.  *Voting from Home: Voting Absentee by Mail*, Jon Husted, Ohio Secretary of State,

http://www.sos.state.oh.us/sos/elections/Voters/votingAbsenteeByMail.aspx (last visited Nov.

25, 2015).  Ohio does offer voters covered under the Uniformed and Overseas Civilian Absentee

Voting Act of 1986 ("UOCAVA"), 42 U.S.C. §§1973ff-1973ff-6, the option of receiving their

absentee ballots electronically through e-mail.  *See id.*; *Requesting and Receiving an Absentee

Ballot for Uniformed Services and Overseas Voters*, Jon Husted, Ohio Secretary of State,

http://www.sos.state.oh.us/sos/elections/overseas/applyUOCAVA.aspx (last visited Nov. 25,

2015).

---

[1] Screen access software transmits textual information on a computer, tablet, or smartphone screen into an audio output or a refreshable Braille display pad.  Decl. of Sharron Rush at ¶ 6, Dec. 7, 2015 ("Rush Decl.").  Refreshable Braille displays have pins that rise and fall to form words in Braille.  *Id.*  Some screen access software allows those blind persons who can read large print to magnify text on a screen to the point where they can read it visually.  *Id.*

To use a paper absentee ballot requires sight and, as such, is not accessible to Plaintiffs or to other individuals who are blind or have print disabilities. Decl. of Shelbi Hindel ¶ 7, Dec. 4, 2015 ("Hindel Decl."); Pierce Decl. ¶ 10; Decl. of Marianne Denning ¶ 7, Dec. 4, 2015 ("Denning Decl."). Thus, to vote absentee, the individual Plaintiffs and other blind and print-disabled Ohio voters must rely on the assistance of another person to read and mark their paper absentee ballots. Hindel Decl. ¶ 7; Pierce Decl. ¶ 10; Denning Decl. ¶ 7. Such assistance strips the individual Plaintiffs of the secrecy of their ballots. Although Mr. Husted offers voters without disabilities the opportunity to cast their absentee votes privately and independently, by offering only paper absentee ballots, he deprives the individual Plaintiffs of an equal opportunity to do the same.

Mr. Husted will make absentee ballots available to voters in advance of the March 15, 2016 presidential primary election beginning on February 17, 2016. *See* Ohio Secretary of State Jon Husted, *2016 Ohio Elections Calendar*.[2]

## II.    Accessible absentee voting systems

There are several accessible voting systems available that would afford the individual Plaintiffs and other blind and print-disabled Ohio voters an equal opportunity to vote absentee privately and independently. Two such tested systems that are available at no charge are Maryland's online ballot marking tool and the Prime III voting system. Decl. of Nicole Charlson ¶ 4, Dec. 7, 2015 ("Charlson Decl."), Ex. A at 4 (Maryland State Board of Elections, Volume I— Technical Proposal); Decl. of Mark Riccobono ¶ 6, Dec. 7, 2015 ("Riccobono Decl."); Decl. of Kathryn Summers ¶¶ 6-7, Dec. 3, 2015 ("Summers Decl."); Decl. of Juan Gilbert ¶¶ 7, 12, 14, Dec. 4, 2015 ("Gilbert Decl."). Both systems allow voters to read and mark their absentee

---

[2] *Available at*
http://www.sos.state.oh.us/sos/upload/publications/election/2016ElectionCalendar12x18.pdf.

ballots on their computers using screen access software.  Riccobono Decl. ¶ 7; Gilbert Decl. ¶ 9.

When voters are done marking their ballots, they must print and mail in the ballots to have their

votes counted.  Riccobono Decl. ¶ 7; Gilbert Decl. ¶ 9.  Although Maryland's tool requires

voters to sign the ballot before mailing it back, because the signature page prints separately from

the ballot, voters who need assistance with signing need not sacrifice the secrecy of their voting

selections.  Summers Decl. ¶ 8.

 Both tools have been reviewed by experts to ensure that they are accessible for

individuals who are blind or have print disabilities and that they are secure.  Professor Kathryn

Summers of the University of Baltimore performed usability testing on Maryland's online ballot

marking tool and found the tool to be exemplary in its usability for voters with disabilities.

Summers Decl. ¶ 7.  Prime III was designed to be accessible for people with a variety of

disabilities and its usability and accessibility have been tested by the young, old, illiterate, blind,

deaf, people without arms, and those without any disabilities.  Gilbert Decl. ¶¶ 7, 12.  The

following organizations have used and tested Prime III: Self-Advocates Becoming Empowered

(an organization of people with cognitive disabilities), National Council on Independent Living,

and the Alabama Institute for the Deaf and Blind, among other organizations.  *Id.* ¶ 12.

Professor Juan Gilbert, who was certified as an expert in secure voting systems in *National

Federation of the Blind v. Lamone*, No. 14-1631, 2014 WL 4388342, at *9 (D. Md. Sept. 4,

2014), has tested Maryland's online ballot marking tool and found that it did not add any

additional vulnerabilities to absentee voting in Maryland.  *Id.* ¶ 15.  Critically, Professor Gilbert

found that Maryland's tool is software independent, meaning that an undetected change or error

in its software could not cause an undetectable change or error in an election outcome.  *Id.*

Professor Gilbert designed the Prime III system and, in doing so, was careful to ensure that it

was a secure voting system that produced a voter verified paper trail. *Id.* ¶ 11. Security experts have reviewed the Prime III system and none has ever been able to hack into it. *Id.* ¶¶ 11-12.

The Prime III voting system, which can be used for both in-person and absentee voting, has been used successfully in state elections in Oregon, Wisconsin, and New Hampshire. *Id.* ¶ 13. New Hampshire will be using the Prime III system for its statewide elections in 2016. *Id.* More than 1,700 voters with disabilities used Maryland's online ballot marking tool in the November 2014 election. Riccobono Decl. ¶ 7. Many NFB members were among those who successfully used the tool in that election to vote privately and independently by absentee ballot for the first time. *Id.*

### III. The Secretary of State's voter services website

Mr. Husted's office operates a voter services website, www.sos.state.oh.us/SOS/elections.aspx, that offers Ohio voters extensive information about voting procedures and policies, candidates, new voting initiatives, election results and data, campaign finance information, and upcoming elections. The website also provides voters with a number of publications and forms, including the Voter Registration and Absentee Ballot Request forms and the Voter Access Guide, Voter Registration Instructions, and Guide to Voting in Ohio publications. *See Elections/Voters/Candidates Publications*, Jon Husted, Ohio Secretary of State, http://www.sos.state.oh.us/SOS/publications.aspx#Elections (last visited Nov. 30, 2015). Voters who wish to change their voter registration information can do so online using the voter services website. *See Update Your Voter Registration Information*, Jon Husted, Ohio Secretary of State, https://olvr.sos.state.oh.us/ovru/Modify.aspx (last visited Nov. 30, 2015).

In February 2015, the ACLU and Center for Accessible Technology published a report, *Access Denied: Barriers to Online Voter Registration for Citizens with Disabilities*, explaining

the need for accessible online voter registration for voters with disabilities and assessing the accessibility of several states' voter services websites.  *See* Rush Decl. ¶ 10, Ex. B (ACLU and Center for Accessible Technology, *Access Denied: Barriers to Online Voter Registration for Citizens with Disabilities* (Feb. 2015)).  The report included an assessment of Ohio's voter services website and found that Ohio's website failed in seven out of nine categories of accessibility: forms; screen reader access; semantic organization; skip navigation; alt text; keyboard access; and text size and scaling.  *Id.*, Ex. B at 46-47.

Sharron Rush, Executive Director of Knowbility, Inc., a nonprofit organization that is a leader in advocacy and training for web and digital technology accessibility, and an expert in accessible technology, reviewed the ACLU and Center for Accessible Technology's report and conducted her own testing of Ohio's voter services website to determine if it was accessible to blind individuals using screen access software.  *Id.* ¶¶ 3, 4, 7, 8, 10.  Ms. Rush's testing found many of the same problems identified in the ACLU and Center for Accessible Technology's report.  *Id.* ¶ 10.  In particular, she found that the website uses many graphics that are not properly labeled, rendering them incomprehensible to a screen reader.  *Id.* ¶ 7.  She also found that the website lacks a heading structure that would enable a screen reader to move efficiently within the page and has improperly designed menus that cannot be expanded using screen access software.  *Id.*  These issues create an incomprehensible experience for a blind user attempting to navigate through the website using screen access software.  *Id.*  Ms. Rush also found that the website has various items on its pages improperly ordered, causing a screen reader user to jump to different parts of a given page when trying to read through the page from top to bottom.  *Id.*

Ms. Rush also assessed two of the forms available on the voter services website: (1) the Voter Registration and Information Update Form

(http://www.sos.state.oh.us/sos/upload/elections/forms/4010.pdf); and (2) the Application for Absentee Voter's Ballot (http://www.sos.state.oh.us/sos/upload/elections/forms/11-A.pdf). *Id.* ¶ 8. She found that both forms lack the basic tagging structure that enables screen readers to process the content. *Id.* The Voter Registration and Information Update Form contains incorrectly ordered form controls and many items improperly labeled as images. *Id.* In addition, many of the form fields are incorrectly labeled. *Id.* For example, screen access software reads one checkbox as "Check18Yes" and reads the driver's license field as "TextLice." *Id.* She found that the Application for Absentee Voter's Ballot was not interactive, meaning that a user would have to print the form and fill it out manually. *Id.* Such a method of completing a form is completely inaccessible to a blind user. *Id.*

Based on her testing, Ms. Rush has concluded that the voter services website, including its forms, is not accessible for individuals using screen access software. *Id.* ¶¶ 7-8. The website fails to meet the Web Content Accessibility Guidelines ("WCAG"), which is the de facto accepted industry standard for web accessibility. *Id.* ¶ 9.[3]

---

[3] The U.S. Department of Justice has required compliance with the WCAG 2.0 AA standard. *See, e.g.*, *Nat'l Fed. of the Blind v. HRB Digital LLC,* No. 1:13-cv-10799-GAO (D. Mass Mar. 25, 2014), available at http://www.ada.gov/hrb-cd.htm (consent decree in which the United States was a party)*; Settlement Agreement Between the United States of America and EdX Inc. Under the Americans with Disabilities Act*, DJ No. 202-36-255 (April 2, 2015), *available at* http://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/04/02/edx_settlement_agreement.pdf; *Settlement Agreement Between the United States of America and the National Museum of Crime and Punishment Under the Americans with Disabilities Act*, DJ No. 202-16-189 (Jan. 13, 2015), *available at* http://www.justice.gov/file/317596/download (appendix citing WCAG 2.0 AA standard is available at http://www.justice.gov/file/317591/download); *Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and Peapod, LLC Under the Americans with Disabilities Act*, DJ No. 202-63-169 (Nov. 17, 2014), *available at* http://www.justice.gov/file/163956/download.

IV.     **The individual plaintiffs and their disabilities, use of assistive technology, and plans for voting**

Shelbi Hindel is a resident of Columbus, Ohio.  Hindel Decl. ¶ 2.  Ms. Hindel is blind and uses the screen access software Job Access with Speech ("JAWS") to access text on her computer.  *Id.* ¶¶ 3, 5.  Barbara Pierce resides in Oberlin, Ohio.  Pierce Decl. ¶ 2.  She is blind and accesses text on her computer using VoiceOver, a type of screen access software that is built into Apple devices.  *Id.* ¶¶ 3, 5.  Marianne Denning lives in Cincinnati, Ohio and is a blind JAWS user.  Denning Decl. ¶¶ 2, 3, 5.  Ms. Hindel, Ms. Pierce, and Ms. Denning are all registered to vote in Ohio and all wish to vote in the March 15, 2016 presidential primary election.  Hindel Decl. ¶¶ 4, 9; Pierce Decl. ¶¶ 4, 9; Denning Decl. ¶¶ 4, 9.  Because they are blind, neither Ms. Hindel, Ms. Pierce, nor Ms. Denning can read or fill out a paper absentee ballot on their own.  Hindel Decl. ¶ 7; Pierce Decl. ¶ 11; Denning Decl. ¶ 7.  For the March 2016 primary, Ms. Hindel, Ms. Pierce, and Ms. Denning each wants the option of voting absentee privately and independently.  Hindel Decl. ¶ 9; Pierce Decl. ¶ 11; Denning Decl. ¶ 9.  To have an equal opportunity to vote absentee, Plaintiffs require access to accessible absentee ballots on the same day that other voters first have access to absentee ballots: on February 17, 2016.  *See* Ohio Secretary of State Jon Husted, *2016 Ohio Elections Calendar*.[4]

Ms. Hindel has two reasons for wanting the option of voting absentee.  Hindel Decl. ¶ 6.  First, voting absentee from her own home is much more convenient for her than voting in person at the polls.  *Id.*  Second, her voting location has moved farther away from her home in recent years.  *Id.*  It is very difficult for Ms. Hindel to reach her new polling location.  *Id.*  Although she used to be able to walk to her poll, she now must either rely on her son to drive her there or take the public bus.  *Id.*  Because there are so few pedestrians near the bus stop who could help orient

---

[4] *Available at*
http://www.sos.state.oh.us/sos/upload/publications/election/2016ElectionCalendar12x18.pdf.

her to the polling place, Ms. Hindel is fearful of taking the bus to vote. *Id.* Although Ms. Hindel's son now lives with her, she knows he will not live with her forever and thus does not want to depend on him for transportation to the poll. *Id.*

Ms. Pierce prefers voting in-person at her polling location, but wants the option of voting absentee privately and independently in case she is ill or traveling on election day. Pierce Decl. ¶ 8. Furthermore, Ms. Pierce's terrible experience voting in person in a past election has made her more likely to vote absentee in future elections. *Id.* In a previous election, Ms. Pierce's voting machine would not work properly and the poll workers were unable to fix it. *Id.* As a result, Ms. Pierce was left with no choice but to have her husband read her the ballot and cast her votes for her. *Id.* This experience of being unable to vote privately and independently was devastating to Ms. Pierce. *Id.* She is fearful that this past voting experience could happen again in a future election and therefore wants the option of voting privately and independently by absentee ballot. *Id.*

Ms. Denning wants the option of voting absentee in the March 2016 primary because of problems accessing transportation to the polls. Denning Decl. ¶ 6. Ms. Denning relies on her sighted husband for a ride to the polls. *Id.* Indeed, Ms. Denning has missed voting in past elections when her husband has been away and could not drive her to vote. *Id.* Even when her husband is home, he leaves early in the morning to vote, so Ms. Denning must adapt her schedule to his if she wants to ride with him to vote. *Id.* This difficulty with transportation, coupled with the convenience of being able to vote faster from home than at the poll, makes absentee voting strongly desirable to Ms. Denning. *Id.*

Ms. Hindel, Ms. Pierce, and Ms. Denning also want access to the Secretary of State's voter services website in advance of the March 2016 primary election. Hindel Decl. ¶ 9; Pierce

Decl. ¶ 9; Denning Decl. ¶ 9.  Ms. Pierce attempted to use the website in advance of the
November 2015 election to change the address on her voter registration.  Pierce Decl. ¶ 6.  Ms.
Pierce regularly uses VoiceOver to access and complete electronic forms on her computer.  *Id.* ¶
5.  Yet because of the voter services website's inaccessible design, Ms. Pierce could not
independently locate the change of registration form on the website, nor could she fill out the
form once she reached it.  *Id.* ¶¶ 6-7.

   V.   **The National Federation of the Blind.**

   The National Federation of the Blind is the oldest and largest national organization of
blind persons.  Riccobono Decl. ¶ 4.  It has affiliates in all 50 states, Washington, D.C., and
Puerto Rico, and its headquarters are located in Baltimore, Maryland.  *Id.*  The NFB and its
affiliates are widely recognized by the public, Congress, executive agencies of state and federal
governments, and the courts as a collective and representative voice on behalf of blind
Americans and their families.  *Id.*  The organization promotes the general welfare of the blind by
assisting the blind in their efforts to integrate themselves into society on terms of equality and by
removing barriers that result in the denial of opportunity to blind persons in virtually every
sphere of life, including education, employment, family and community life, transportation, and
recreation.  *Id.*

   The ultimate purpose of the NFB is the complete integration of the blind into society on a
basis of equality.  *Id.* ¶ 5.  This objective includes the removal of legal, economic and social
discrimination.  *Id.*  As part of its mission and to achieve these goals, the NFB has worked
actively to ensure that the blind have an equal opportunity to cast their votes privately and
independently by collaborating with developers of voting technology to ensure its accessibility
for the blind.  *Id.*  In particular, the NFB has devoted extensive resources – resources that have

been diverted from other important projects – to helping develop absentee voting technology that is accessible to the blind. *Id.* Furthermore, the NFB has expended resources working with organizations, businesses, and governmental entities around the country to help make their websites accessible to blind individuals. *Id.*

The NFB is a membership organization and has many blind members who, like Ms. Hindel, Ms. Pierce, and Ms. Denning, are registered to vote in Ohio, desire to exercise their right to vote through the use of an absentee ballot, and wish to access the important information and forms available on the Secretary of State's voter services website. Decl. of Aleeha Dudley ¶¶ 2, 4, Dec. 4, 2015 ("Dudley Decl."); Decl. of James Fetter ¶¶ 2, 4, Dec. 7, 2015 ("Fetter Decl."); Riccobono Decl. ¶ 8.

Two NFB members' experiences exemplify the experiences of NFB members throughout Ohio. Aleeha Dudley, a member of the NFB, resides in Columbus, Ohio, but is currently participating in an out-of-state program. Dudley Decl. ¶¶ 2-3. Ms. Dudley is a blind VoiceOver user. *Id.* ¶¶ 2, 5. Because Ms. Dudley will still be in an out-of-state program on March 15, 2016, voting absentee will be her only option for participating in that election. *Id.* ¶ 8. Ms. Dudley is not willing to sacrifice the secrecy of her votes by finding someone sighted to mark her votes for her on a paper absentee ballot. *Id.* ¶¶ 7-8. Therefore, as she did in the November 2015 election when she was also out of state, Ms. Dudley will skip voting altogether in the March 2016 primary if she cannot vote absentee privately and independently by then. *Id.* ¶ 8. Even once she returns to Columbus, Ohio in the late spring or early summer of 2016, she will still want the option of voting absentee privately and independently given her past experiences of waiting at the polls as poorly trained poll workers struggle to enable the voting machines for nonvisual access. *Id.* ¶ 9.

James Fetter is another NFB member who has experienced problems with Ohio's voting system and would like to have the option of voting absentee.  Fetter Decl. ¶¶ 2-4, 14.  Mr. Fetter is a blind JAWS user.  Fetter Decl. ¶¶ 3, 5.  When Mr. Fetter moved from Massillon to Columbus, he attempted to use the Secretary of State's voter services website to update his voter registration.  Fetter Decl. ¶ 6.  He could not independently fill out the form using JAWS because it was inaccessible and he could not check the required checkboxes to submit the form.  Fetter Decl. ¶ 7.  Because he could not independently complete the form, his wife (who is sighted) completed it for him; she was able to do so in about two minutes.  Fetter Decl. ¶ 8.  Mr. Fetter's wife has assisted him with completing his ballot in previous elections, but he would not feel comfortable with receiving assistance from someone other than his wife if she were unavailable.  Fetter Decl. ¶ 9-10, 13.  Mr. Fetter wants to vote privately and independently, so he would like to have the option to vote absentee without assistance.  Fetter Decl. ¶ 13-14.

Like Ms. Dudley and Mr. Fetter, many NFB members are registered to vote in Ohio and wish to vote in the March 15, 2016 presidential primary election.  Dudley Decl. ¶¶ 4, 8; Fetter Decl. ¶ 11; Riccobono Decl. ¶ 8.  Because they are blind, these NFB members cannot read or fill out a paper absentee ballot on their own.  Dudley Decl. ¶ 6; Fetter Decl ¶ 12.  For the March 2016 primary, NFB members want the option of voting absentee privately and independently. Dudley Decl. ¶ 8; Fetter Decl ¶ 13-14.  To have an equal opportunity to vote absentee, NFB members require access to accessible absentee ballots on the same day that other voters first have access to absentee ballots: on February 17, 2016.  *See* Ohio Secretary of State Jon Husted, *2016 Ohio Elections Calendar.*[5]

---

[5] *Available at*
http://www.sos.state.oh.us/sos/upload/publications/election/2016ElectionCalendar12x18.pdf.

In future elections, NFB members also will need a way of updating their voter registration if they move or change their name. *See, e.g.*, Pierce Decl. ¶ 9. Accordingly, NFB members need access to the voter services website in advance of the February 16, 2016 deadline for updating voter registration in time to participate in the March 2016 election. *See* Ohio Secretary of State Jon Husted, *2016 Ohio Elections Calendar*.[6]

## LEGAL STANDARD

Plaintiffs are entitled to a preliminary injunction if they can demonstrate that: (1) "[they are] likely to succeed on the merits"; (2) "that [they are] likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in [their] favor"; and (4) "that an injunction is in the public interest." *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## ARGUMENT

### I. Plaintiffs are likely to succeed on the merits of their ADA claim.

Title II of the ADA requires that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendant is a public entity within the scope of Title II. 42 U.S.C. § 12131(1)(B).

In providing services such as a website or absentee voting, Mr. Husted must afford the individual Plaintiffs "an opportunity to participate in or benefit from the . . . service . . . equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). Indeed, Mr. Husted must provide Plaintiffs a

---

[6] *Available at*
http://www.sos.state.oh.us/sos/upload/publications/election/2016ElectionCalendar12x18.pdf.

service that is "as effective in affording equal opportunity" as is provided to others.  28 C.F.R. § 35.130(b)(1)(iii).

Public entities are also required to provide "appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."  28 C.F.R. § 35.160(b)(1).  The aids and services must be provided to "protect the privacy and independence of the individual with a disability."  § 35.160(b)(2).  Therefore, Mr. Husted must provide Ms. Hindel, Ms. Pierce, Ms. Denning, and members of the NFB with an opportunity to participate in and benefit from its absentee voting program or service and voter services website that is equal to and as effective as that afforded to individuals without disabilities.

To prove a violation of the ADA, Ms. Hindel, Ms. Pierce, Ms. Denning, and NFB members must establish that: (1) they have disabilities; (2) they are otherwise qualified to receive the benefits of the public service, program, or activity at issue; and (3) they were excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disabilities.  *Jones v. City of Monroe, MI*, 341 F.3d 474, 477 (6th Cir. 2003).  The first and second prongs of this test are easily met.  Because they are blind, Ms. Hindel, Ms. Pierce, Ms. Denning, and other NFB members all have a physical impairment "that substantially limits [the] . . . major life activit[y]" of seeing and thus have a "disability" under the ADA.  42 U.S.C. § 12102.  Furthermore, because Ms. Hindel, Ms. Pierce, Ms. Denning, and many other NFB members are registered to vote in Ohio, they are eligible and thus "qualified" to receive the benefits of voting by absentee ballot and using the voter services website to access information and complete forms in advance of the March 15, 2016 presidential primary elections.

Plaintiffs satisfy the third element of this test as well. Ms. Hindel, Ms. Pierce, Ms. Denning, and many NFB members have been denied the right to vote absentee and to use the voter services website in a manner that is "equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). The only method of absentee voting that Mr. Husted currently offers, a paper absentee ballot, is "not as effective in affording equal opportunity" and does not "protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.130(b)(1)(iii), § 35.160(b)(2).

### A.    Absentee voting

Because Mr. Husted offers absentee voting as a program or service available to all Ohio voters, he must afford voters with disabilities an equal opportunity to access this program or service. *See, e.g.*, *Nat'l Fed.of the Blind v. Lamone*, No. 14-1631, 2014 WL 4388342, at *11 (D. Md. Sept. 4, 2014) (holding that Maryland's absentee voting program constitutes a distinct program or service under the ADA to which individuals with disabilities must have access because "it is a service that the State has opted to extend to *all* Maryland citizens") (emphasis in original). Like other Ohio voters, Plaintiffs must have the option of voting absentee if they are traveling during an election, too ill to vote in person, unable to secure transportation to the poll, or simply desire the opportunity to vote at a time and place most convenient for them.

Although Ohio offers all voters without disabilities the opportunity to vote absentee privately and independently, by making available only a paper absentee ballot, it requires Plaintiffs to obtain sighted assistance to participate in absentee voting, thereby sacrificing the privacy of their ballots. Hindel Decl. ¶ 7; Pierce Decl. ¶ 10; Denning Decl. ¶ 7. When voters who are blind or have dexterity impairments must rely on the kindness, availability, honesty, and accuracy of a third party to mark their absentee ballots for them, they are denied an equal

opportunity to participate in and enjoy the benefits of absentee voting. Courts throughout the country have held that requiring voters with disabilities to obtain third-party assistance to vote, when all other voters can vote privately and independently, violates the ADA. *See Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 197, 199 (2d Cir. 2014); *Lamone*, 2014 WL 4388342, at *11-12; *California Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1238 (N.D. Cal. 2013); *Nat'l Org. on Disability v. Tartaglione*, No. Civ. A. 01-1923, 2001 WL 1231717, at *3-4 (E.D. Pa. Oct. 11, 2001).

These courts understand that when individuals with disabilities must rely on the assistance of another person to cast their votes for them, their autonomy and right to live independently in the world are severely constrained, as is their right to vote at all. While nondisabled individuals need only be registered to vote, disabled voters who are forced to obtain assistance to vote must not only be registered, but must rely on a third party to be available and willing to assist them with voting, and to do so accurately and honestly. Voting is too important a civic duty to require the blind "to rely on the honesty and carefulness of sighted individuals." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1270 (D.C. Cir. 2008). As the Second Circuit reasoned in *Disabled in Action*, "[t]he right to vote should not be contingent on the happenstance that others are available to help." 752 F.3d at 199. This is particularly so given that "one of the central features of voting, and one of its benefits, is voting privately and independently." *California Council of the Blind*, 985 F. Supp. 2d at 1238. Requiring Plaintiffs to obtain assistance to vote absentee "at best provides these individuals with an inferior voting experience 'not equal to that afforded others' . . . [because] [b]lind and visually impaired voters are forced to reveal a political opinion that others are not required to disclose." *Id.* at 1239 (quoting 28 C.F.R. § 35.130(b)(1)(ii)).

The solution for ending Ohio's discriminatory treatment of Ms. Hindel, Ms. Pierce, Ms. Denning, and NFB members is straightforward: Mr. Husted must make available accessible absentee voting technology that would allow Plaintiffs to vote absentee privately and independently. There are at least two absentee voting technologies, Prime III and Maryland's online ballot marking tool, that are free of charge, secure, and would provide for accessible absentee voting. *See* Charlson Decl. ¶ 4, Ex. A at 4 (Maryland State Board of Elections, Volume I—Technical Proposal); Riccobono Decl. ¶ 6; Summers Decl. ¶¶ 6-7; Gilbert Decl. ¶¶ 7, 12, 14. As such, Mr. Husted must make one of these technologies, or an alternative accessible absentee voting system, available to Plaintiffs as either a reasonable modification to its absentee voting program or as an auxiliary aid or service. *See* 28 C.F.R. § 35.130(b)(7) (requiring that public entities "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . ."); 28 C.F.R. § 35.160(b)(1) (requiring that public entities "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity"). Indeed, the Title II regulations require public entities to provide auxiliary aids and services that will "protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).

Mr. Husted may only refuse to make an accessible absentee voting system available to Plaintiffs if he can prove that doing so would either fundamentally alter the nature of the absentee voting program or, in the case of providing an auxiliary aid or service, that it would pose an undue financial or administrative burden. 28 C.F.R. § 35.130(b)(7); 28 C.F.R. § 35.164. Mr. Husted will not be able to establish that making absentee voting accessible would

fundamentally alter the nature of the absentee voting program – all votes would still be cast in

absentia and counted in the election results.  Furthermore, because there are voting systems

available that have been used successfully in previous statewide elections in other states, have

been found to be secure, and are available at no cost, Mr. Husted will not be able to establish that

implementing one of these accessible absentee voting systems would pose an undue financial or

administrative burden.  *See* Charlson Decl. ¶ 4, Ex. A at 4 (Maryland State Board of Elections,

Volume I—Technical Proposal); Riccobono Decl. ¶ 6; Summers Decl. ¶¶ 6-7; Gilbert Decl. ¶¶ 7,

12, 14.

### B.    Voter services website

Mr. Husted's voter services website is another program, service, or activity of the state to

which Plaintiffs must have access.  *See Martin v. Metro. Atlanta Rapid Transit Auth.*, 225 F.

Supp. 2d 1362, 1377 (N.D. Ga. 2002) (holding that public transit agency violated Title II of the

ADA by maintaining an inaccessible website); Nondiscrimination on the Basis of Disability;

Accessibility of Web Information and Services of State and Local Government Entities and

Public Accommodations, 75 Fed. Reg. 142, 43464 (proposed July 26, 2010)[7] ("There is no doubt

that Web sites of state and local government entities are covered by title II of the ADA").  Ohio's

voter services website provides voters and prospective voters with critical information about

voting procedures and policies, candidates, new voting initiatives, election results and data,

campaign finance information, and upcoming elections.  Mr. Husted's office also offers various

publications and critical forms related to voting through its website and provides voters with a

number of publications and forms.  *See Elections/Voters/Candidates Publications*, Jon Husted,

Ohio Secretary of State, http://www.sos.state.oh.us/SOS/publications.aspx#Elections (last visited

---

[7] *Available at* http://www.gpo.gov/fdsys/pkg/FR-2010-07-26/pdf/2010-18334.pdf.

Nov. 30, 2015) (providing links to the Voter Registration and Absentee Ballot Request forms
and, among other publications, the Voter Access Guide, Voter Registration Instructions, and
Guide to Voting in Ohio).  For voters who need to update their registration in advance of an
election, Ohio makes it easy to do so: voters can fill out and submit a change of registration form
entirely online.  *See Update Your Voter Registration Information*, Jon Husted, Ohio Secretary of
State, https://olvr.sos.state.oh.us/ovru/Modify.aspx (last visited Nov. 30, 2015).

      Yet the website's valuable information and critical services are available only to sighted
Ohio voters and prospective voters.  For Plaintiffs and other blind voters who use screen access
software to navigate, review, and interact with websites, the Secretary of State's voter services
website is off limits.  *See* Rush Decl. ¶¶ 7-8; Pierce Decl. ¶¶ 6-7.  Although some of the
information, publications, and forms posted on the website may be available in alternative
formats or by telephone, because Mr. Husted makes these resources instantaneously available to
voters without disabilities, at whatever time they choose to access them, he must provide voters
with disabilities an equal opportunity to access the voter resources they need, whenever they may
need them.  *See Martin*, 225 F. Supp. 2d at 1377 (holding that the public transit agency's website
must be accessible, even though information could be requested in Braille and was also available
by telephone).  Only by making the voter services website accessible can Mr. Husted ensure that
his "communications with applicants, participants, members of the public, and companions with
disabilities are as effective as communications with others."  28 C.F.R § 35.160(a)(1).

      Making the voter services website accessible would not constitute a fundamental
alteration to the website because it would remain a fully operational website, simply one that
more people could access.  Nor would correcting the website to be accessible impose an undue

financial or administrative burden given that doing so would cost only between $25,000 to $50,000 and creating a new website could be considerably less expensive.  Rush Decl. ¶ 11.

Because Plaintiffs meet all three elements of a claim under Title II of the ADA, they are likely to succeed on the merits of their claim.

## II. Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief.

Irreparable harm may be presumed when a defendant has violated a civil rights statute such as the ADA.  *See Sellers v. University of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012) (noting support for the proposition that "when Congress has enacted a statute such as the ADA to prohibit discrimination against individuals with disabilities, the occurrence of the very discrimination Congress sought to prevent is the type of irreparable injury that may support the issuance of an injunction").[8]  Irreparable harm may also be presumed when, as is the case with the ADA, the statute explicitly provides for injunctive relief.  *See* 42 U.S.C. § 12188(a)(2) ("Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter."); *CSX Transp., Inc. v. Tennessee State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992); *Burlington N.R.R. Co. v. Dep't of Revenue*, 934 F.2d 1064, 1074 (9th Cir. 1991).

If the Court does not grant a preliminary injunction requiring Mr. Husted to adopt an accessible absentee voting system in advance of the March 15, 2016 presidential primary

---

[8] *See also Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("[W]here a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation"); *EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th Cir. 1984) (holding that the injuries facing the plaintiffs, such as loss of work, loss of future prospects for work, and infliction of emotional harm, were the type of injuries Congress sought to avoid through the ADEA and thus constituted irreparable harm).

election, Plaintiffs will have no choice but to forfeit the benefits of voting absentee or sacrifice the privacy of their ballots.  Likewise, if the Court does not order Mr. Husted to make his voter services website accessible, they will be denied access to information about the election and the opportunity to update their voter registration in advance of the primary through the voter services website.  NFB members like Ms. Dudley, who will be out of state during the March 2016 primary, will have no method at all of casting their votes privately and independently if they cannot use an accessible absentee ballot in the March primary.  Dudley Decl. ¶ 8.  For this reason, Ms. Dudley will refrain from voting altogether if she cannot vote absentee privately and independently in March.  *Id.*  No amount of monetary relief can compensate for not being able to cast one's vote privately and independently, from being excluded from the absentee voting program, and from being denied the critical information and resources on the voter services website.

### III.     The balance of equities tips decidedly in Plaintiffs' favor.

The balance of equities tilts heavily in favor of Plaintiffs in this case.  Without access to accessible absentee voting, Ms. Hindel, Ms. Pierce, Ms. Denning, and many members of the NFB will be excluded from voting absentee unless they sacrifice the privacy of their ballots.  For NFB members like Ms. Dudley who will be out of state during the March primary, the denial of an accessible absentee voting option will force them to reveal their voting selections to third parties if they wish to exercise their fundamental right to vote.  And unless the voter services website is corrected to work with screen access software in advance of the March election, Plaintiffs will be at a severe disadvantage when it comes to accessing information about key election dates, the candidates on the ballot, and their poll locations, as well as reviewing and filling out critical forms, such as the absentee ballot request and change of voter registration

forms. Accordingly, Plaintiffs will suffer the effects of discrimination and exclusion from one of the most important institutions in a democracy.

In contrast, Mr. Husted's office will suffer little to no harm if a preliminary injunction is granted. Accessible and secure absentee voting technology is readily available at no cost. *See* Charlson Decl. ¶ 4, Ex. A at 4 (Maryland State Board of Elections, Volume I—Technical Proposal); Riccobono Decl. ¶ 6; Summers Decl. ¶¶ 6-7; Gilbert Decl. ¶¶ 7, 12, 14. In addition, it is not particularly costly to bring the voter services website into compliance with the WCAG 2.0 AA standard. Rush Decl. ¶¶ 9, 11. Rather than cause the Secretary of State's office harm, adopting an accessible method of absentee voting and maintaining an accessible website will further the office's goals of "using technology to streamline the voting process," "improv[ing] how we run elections in Ohio," and providing "enhanced services to voters." *See The Office: Secretary Husted*, Jon Husted, Ohio Secretary of State, http://www.sos.state.oh.us/sos/agency/secHustedRedBio/Biography.aspx (last visited Dec. 1 2015). Accordingly, the balance of equities tips heavily in favor of granting Plaintiffs a preliminary injunction.

### IV. An injunction is in the public interest.

Congress has made clear in enacting the ADA that the public interest lies in the eradication of discrimination against persons with disabilities, declaring that the ADA's purpose is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Tennessee v. Lane*, 541 U.S. 509, 516 (2004) (quoting 42 U.S.C. § 12101(b)(1)). In the context of preliminary injunctions, this Circuit has firmly held that "[t]he public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA." *Jones*, 341 F.3d at 490; *accord Deck v. City of Toledo*, 29 F.

Supp. 2d 431, 434 (N.D. Ohio 1998) (noting that "there is a significant public interest in eliminating discrimination against individuals with disabilities") (internal quotation marks omitted).

Furthermore, a preliminary injunction in this case would ensure that more citizens have the opportunity to cast their votes, thus promoting the fundamental right to vote.  As the Sixth Circuit has observed:

> [T]he public has a strong interest in exercising the fundamental political right to vote. That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful. The public interest therefore favors permitting as many qualified voters to vote as possible.

*Obama for Am.*, 697 F.3d at 436-37 (internal quotation marks and citations omitted). Granting injunctive relief in this case promotes the right to vote, is consistent with the anti-discrimination mandate of the ADA, and thus serves the public interest.

### V. Although a bond should not be required here, Plaintiffs are prepared to post one if need be.

The Sixth Circuit has interpreted Federal Rule of Civil Procedure 65(c) to provide the district judge discretion to determine whether a bond is required for security.  *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (finding that "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security") (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), *cert. denied*, 440 U.S. 944 (1979); *Urbain v. Knapp Bros. Manuf. Co.*, 217 F.2d 810, 815-16 (6th Cir. 1954), *cert. denied*, 349 U.S. 930 (1955)).  In this case, Plaintiffs should not be required to post a bond given that they have brought this case to vindicate their federal civil rights and the balance of equities weighs strongly in their favor.  *See, e.g.*, *Am. Sys. Consulting, Inc. v. Devier*, 514 F.

Supp. 2d 1001, 1010 (S.D. Ohio 2007) ("Having considered the equitable circumstances of this

case, the Court in its discretion concludes that no posting of a bond is warranted.").

Nevertheless, should the Court decide that a bond is appropriate here, Plaintiffs are

prepared to cover any costs and expenses incurred by Mr. Husted in making an accessible

absentee ballot and voter services website available to Plaintiffs in advance of the March 15,

2016 presidential primary election by posting a cash bond, pending final resolution on the merits,

in the amount deemed proper by the Court.

## CONCLUSION

The balance of the four factors for issuing a preliminary injunction weighs heavily in

Plaintiffs' favor.  For the foregoing reasons, Plaintiffs respectfully request that the Court grant

their Motion for Preliminary Injunction and order Mr. Husted to offer Plaintiffs a method of

voting absentee privately and independently by February 17, 2016, and a voter services website

that offers Plaintiffs all of the same information and the same transactions, with substantially

equivalent ease of use, by February 2, 2016, so that Plaintiffs can use both the accessible

absentee voting system and the voter services website in advance of the March 15, 2016

presidential primary election.

Respectfully submitted,
s/Jason C. Boylan_____
Jason C. Boylan (0082409), Trial Attorney
Kristen Henry (0082382)
DISABILITY RIGHTS OHIO
Ohio Disability Rights Law and Policy Center, Inc.
50 W. Broad Street, Suite 1400
Columbus, Ohio  43215-5923
Telephone:  (614) 466-7264
Facsimile:   (614) 644-1888
jboylan@DisabilityRightsOhio.org
khenry@DisabilityRightsOhio.org

{00233244-7}                            25

Daniel F. Goldstein*
Jessica P. Weber*
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
dfg@browngold.com
jweber@browngold.com

*Counsel for Plaintiffs*

\* *Pro hac vice* motions forthcoming

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing *Motion for Preliminary Injunction*

was filed on December 7, 2015, with the Clerk of Court and was served via regular U.S. Mail to

the Defendants at the following:

The Honorable Jon A. Husted
Ohio Secretary of State
180 E. Broad St., 16th Floor
Columbus, OH 43215

The Honorable Jon A. Husted
c/o Constitutional Offices Section
Ohio Attorney General
30 E. Broad St., 16th Floor
Columbus, OH 43215

s/Jason C. Boylan
Jason C. Boylan (0082409)
Trial Attorney