**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHELBI HINDEL**, *et al.*, | : | |
| | : | |
| *Plaintiffs,* | : | Case No. 2:15cv03061 |
| | : | |
| v. | : | Judge George C. Smith |
| | : | |
| **SECRETARY OF STATE JON HUSTED,** | : | Magistrate Judge Elizabeth |
| | : | Preston Deavers |
| *Defendant.* | : | |
| | : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT OHIO SECRETARY OF STATE**
**JON HUSTED'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Secretary Husted denies blind Ohio voters the opportunity he affords all Ohio voters without disabilities: the opportunity to vote absentee privately and independently.  Instead, if blind voters wish to vote absentee, he requires them to disclose their ballot selections to and rely on the accuracy and honesty of third parties.  As such, Plaintiffs have more than adequately alleged that they are denied an opportunity to participate equally in and benefit from a public program.

By identifying available methods of accessible absentee voting used by other states, Plaintiffs have proposed an auxiliary aid or service, or a reasonable modification, that would effectively provide this equal opportunity.  Furthermore, the supremacy of federal law defeats Secretary Husted's claim that implementing an accessible method of absentee voting in purported conflict with state procedural law constitutes a fundamental alteration. Accordingly, Secretary Husted's motion should be denied.

## STATEMENT OF FACTS

Ohio makes absentee voting available to all registered voters without the need to offer a reason or excuse.  Compl. ¶ 13 (ECF #1).  Voters without disabilities can vote absentee privately

and independently by marking Ohio's paper absentee ballots by hand in a private setting.  *Id*. ¶¶ 15-16.  Blind voters do not have this option.  *Id*. ¶ 16.  Because Secretary Husted offers only paper absentee ballots that Plaintiffs cannot independently read and complete, they must forfeit their privacy and independence if they wish to vote absentee.  *Id*. ¶ 16. Plaintiffs have brought this case, in part,[1] because they wish to have the same opportunity to vote absentee privately and independently that Secretary Husted offers to all other voters.  *Id*. ¶ 17.

Ms. Hindel would like the option of voting absentee because she finds it difficult to reach her distant polling location.  *Id*. ¶ 7.  Ms. Denning has also had difficulty arranging for transportation to her polling location and has sometimes missed voting in past elections when her husband, her primary source of transportation, has been away.  *Id*. ¶ 9.  Ms. Pierce would like the option of voting absentee in case she is ill or out of town during an election.  *Id*. ¶ 8.  Ms. Hindel, Ms. Denning, and Ms. Pierce wish to access the convenient option of absentee voting on the same terms that all other voters enjoy:  privately and independently.  *Id*. ¶¶ 7-9.

Fortunately, technological innovations now make this possible.  Today, there are several available accessible absentee voting tools[2] that allow blind voters to review and mark their absentee ballots electronically using their own screen access software.  *Id*. ¶¶ 18-26.  Screen access software transmits textual information on a computer, tablet, or smartphone screen into an audio output or refreshable Braille display pad.  *Id*. ¶ 7.  In their complaint, Plaintiffs identified two examples of accessible absentee voting tools that would allow Plaintiffs to review and mark their absentee ballots privately and independently using screen access software, Maryland's

---

[1] Plaintiffs also brought this case to challenge Secretary Husted's inaccessible voter services website.  Because Secretary Husted does not address this claim in his motion for judgment on the pleadings; however, Plaintiffs also do not discuss this aspect of their lawsuit here.

[2] Plaintiffs use the terms "tool" and "system" interchangeably when discussing accessible absentee voting options, but none of Plaintiffs' proposed options should be mistaken for a comprehensive election system; the proposed options are merely tools for converting an absentee ballot into an electronic format that can be marked on a computer and printed.

online ballot marking tool and Prime III, and there are other available options as well. *Id.* ¶¶ 18-25. Plaintiffs have informed Secretary Husted in their interrogatory answers that Oregon uses another available accessible absentee voting system. Using these systems, Plaintiffs could vote absentee without having to disclose their voting selections to any other individual. *Id.* ¶¶ 21, 23. Although Plaintiffs may need assistance with signing or mailing their completed ballots, accessible absentee voting systems are designed to protect the secrecy of voters' selections even when receiving this assistance. For example, Maryland's system prints a blank page between the signature page and completed ballot so that someone assisting with signing need not see the marked ballot. *Id.* ¶ 21. Both the Maryland and Prime III systems have been used in other states' elections and are available. *Id.* ¶¶ 20, 22, 24-25.

## LEGAL STANDARD

On motions for judgment on the pleadings, courts employ the standard of review applied to Rule 12(b)(6) motions to dismiss. *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Courts must "construe the complaint in a light most favorable to [the plaintiff] and accept all of her factual allegations as true." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Courts should not grant a motion for judgment on the pleadings unless "plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

## ARGUMENT

Title II of the ADA requires that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendant is such a public entity. 42 U.S.C. § 12131(1)(B).

In providing services, programs, or activities such as absentee voting, Secretary Husted

must afford the individual Plaintiffs "an opportunity to participate in or benefit from the aid, benefit, or service that is . . . equal to that afforded others."  28 C.F.R. § 35.130(b)(1)(ii).[3] Indeed, Secretary Husted must provide Plaintiffs an aid, benefit, or service that is "as effective in affording equal opportunity" as is provided to others.  28 C.F.R. § 35.130(b)(1)(iii).

Public entities are also required to provide "appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."  28 C.F.R. § 35.160(b)(1).   The aids and services must be provided to "protect the privacy and independence of the individual with a disability."  § 35.160(b)(2).

To prove a violation of the ADA, Plaintiffs must establish that:  (1) they have disabilities; (2) they are otherwise qualified to receive the benefits of the public service, program, or activity at issue; and (3) they were excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disabilities.  *Jones v. City of Monroe, MI*, 341 F.3d 474, 477 (6th Cir. 2003).  Secretary Husted disputes only that Plaintiffs have been excluded from participation in or denied the benefits of a service, program, or activity because of their disability.  Def.'s Mem. in Supp. of Mot. for J. on Pleadings (ECF #20) at 11.

The Secretary's argument rests on the faulty premise that he need only provide voters with disabilities some opportunity to vote, rather than an opportunity that is equal to that

---

[3] The regulations implementing Title II of the ADA "carry the force of law," because Congress required the Department of Justice to model these regulations after the existing Section 504 regulations.  *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995); *see Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1307 n.1 (10th Cir. 1999); *accord Babcock v. Michigan*, -- F.3d --, No. 14-1816, 2016 WL 456213, at *3 n.4 (6th Cir. Feb. 5, 2016) (noting that the Title II regulations are entitled to "controlling weight" and relying on the regulations to determine the scope of the ADA's language).  At the very least, the Supreme Court has stated that the Title II ADA regulations "warrant respect" and that "the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  *Olmstead v. L.C.*, 527 U.S. 581, 597-98 (1999) (internal quotation marks omitted).

afforded to all other voters. Yet the ADA requires nothing short of equal opportunity, not mere access under inferior conditions. Furthermore, Secretary Husted's contention that making an accessible method of absentee voting available to Ohio voters with disabilities would constitute an unreasonable modification, an inappropriate auxiliary aid, and a fundamental alteration to Ohio's voting program, solely because doing so might conflict with Ohio's statutory scheme governing certification and selection of voting technology, is belied by the United States Constitution's Supremacy Clause. When necessary, state laws must give way to the requirements of the ADA. *See Nat'l Fed. of the Blind v. Lamone*, -- F.3d --, No. 14-2001, 2016 WL 497187, at *10-11 (4th Cir. Feb. 9, 2016) (certification requirement for ballot marking tools); *Mary Jo C. v. New York State and Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013) (filing deadline for disability retirement benefits). Accordingly, the Court should reject the Secretary's efforts to avoid his responsibility to offer Plaintiffs an equal opportunity to vote absentee privately and independently and allow Plaintiffs' claims to proceed.

I.    **SECRETARY HUSTED DENIES PLAINTIFFS THE BENEFITS OF OHIO'S ABSENTEE VOTING PROGRAM BY FAILING TO OFFER PLAINTIFFS THE SAME OPPORTUNITY TO VOTE PRIVATELY AND INDEPENDENTLY THAT ALL OTHER VOTERS ENJOY.**

A.    **The Court must evaluate Plaintiffs' opportunity to participate in and benefit from Ohio's absentee voting program, not their opportunity to have their vote counted through any available means.**

The ADA guarantees individuals with disabilities an opportunity equal to that afforded others, not merely some degree of access. *See* 28 C.F.R. § 35.130(b)(1)(ii), (iii). Secretary Husted's argument that Plaintiffs' opportunity to vote must be assessed in the context of Ohio's entire voting program misses the point. Because Ohio offers all sighted voters the convenience of voting absentee, it must also allow blind voters this same benefit on equal footing. Whether absentee voting is considered on its own or as a part of Ohio's larger voting program, it is a

distinct benefit, service, program, or activity to which Plaintiffs must have an equal opportunity to access. *See Lamone*, 2016 WL 497187, at *5-6; *see also Ray v. Franklin County Bd. of Elections*, 2008 WL 4966759, at *2-6 (S.D. Ohio 2008) and *Mooneyhan v. Husted*, 2012 WL 5834232, at *3-5 (S.D. Ohio 2012)(both applying ADA to Ohio's absentee voting process). Plaintiffs need not establish that they have been prevented from casting their votes at all; only that they have been denied an equal opportunity to access the benefit, service, program, or activity of absentee voting.

The Fourth Circuit's recent decision in *National Federation of the Blind v. Lamone* is instructive. In *Lamone*, the NFB and individual plaintiffs who are blind or have dexterity impairments challenged Maryland's refusal to implement an online ballot-marking tool that would afford voters with disabilities an equal opportunity to vote privately and independently by absentee ballot. 2016 WL 497187 at *1. Just as Secretary Husted argues here, the defendants in *Lamone* unsuccessfully argued that the court should focus on plaintiffs' access to Maryland's entire voting program, which also offered several options for casting one's vote. *Id*. at *5. Yet the Fourth Circuit rejected this argument, explaining that "defendants' proposed focus is overbroad" and "effectively reads out much of [Title II's] language, suggesting that Title II prohibits only complete exclusion from participation in broadly-defined public programs." *Id*. Instead, the court noted that Title II prohibits discrimination not merely in large public programs, but in services and activities, as well as in the "benefits of" these services, programs, or activities. *Id*. (quoting 42 U.S.C. § 12132). Therefore, the Fourth Circuit held that "it is far more natural to view absentee voting – rather than the entire voting program – as the appropriate object of scrutiny for compliance with the ADA." *Id*. at *6.

The Fifth Circuit reached a similar conclusion in a different context. In *Frame v. City of*

*Arlington*, city residents with disabilities argued that newly constructed and altered sidewalks were a distinct public benefit that must be made accessible to them.  657 F.3d 215, 221 (5th Cir. 2011) (*en banc*).  A Fifth Circuit panel initially held that the sidewalks themselves were not services, programs, or activities of a public entity; instead, plaintiffs only had a right to accessible sidewalks to the extent that noncompliant sidewalks kept them from accessing some other public service, program, or activity.  *Id*. at 222.  Like Secretary Husted's argument here, the panel believed the sidewalks were simply a means to an end and that the ADA only required some way of accessing that end.  Yet sitting *en banc*, the Fifth Circuit rejected this understanding and held that the sidewalks themselves were a distinct public benefit, service, program, or activity to which plaintiffs must have access.  *Id*. at 226.  *Accord Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 286-87 (1st Cir. 2006) (holding that the ADA requires access not only to a prison's overall medical services, but to its provision of prescription medications, one of its "services, programs, or activities"); *Gorman v. Bartch*, 152 F.3d 907, 912-13 (8th Cir. 1998) (concluding that post-arrest transportation to a police station is a distinct service or benefit under Title II of the ADA, even though it is part of the overall program of law enforcement); *Van Velzor v. City of Burleson*, 43 F. Supp. 3d 746, 755 (N.D. Tex. 2014) (holding that the relevant service under Title II of ADA was the city's enforcement of traffic and parking laws, not the city's law enforcement practices as a whole).  Similarly, absentee voting is a distinct service.

Although Secretary Husted argues that 28 C.F.R § 35.150(a) requires the Court to view Ohio's voting program "in its entirety," this regulation, entitled "Existing Facilities," is inapposite here.  As the Fourth Circuit recently explained:

> [28 C.F.R. § 35.150] expressly pertains to "existing facilities."  On its face, this regulation simply provides that a public entity does not have to make each of its facilities accessible as long as individuals with disabilities have access to that entity's offered

> public services. This regulation is targeted principally at physical accessibility and allows a public entity to provide accessibility alternatives that would not require large-scale architectural modifications of existing facilities.

*Lamone*, 2016 WL 497187, at *6; see *Babcock*, 2016 WL 456213, at *3 (describing 28 C.F.R § 35.150 as "addressing existing facilities").

Secretary Husted's strained contention that this case is about "existing facilities" because it pertains to Ohio's lack of accessible absentee voting equipment is unpersuasive. Plaintiffs' requested relief in this case involves implementing ballot-marking software—not physically adapting existing equipment. This is not a case involving the types of expensive architectural modifications that 28 C.F.R § 35.150 was designed to address and mitigate. *See, e.g., Wagner v. White Castle Sys., Inc.*, 309 F.R.D. 425, 431 (S.D. Ohio 2015) (explaining that 28 C.F.R § 35.150 is intended to ensure that the "architectural standards for new construction" are "less costly" for existing facilities). Thus, the "in-the-entirety" standard, expressly applicable only to existing facilities, does not supplant the ADA's mandate that voters with disabilities have an equal opportunity to access all of a public entity's services, programs, or activities, as well as their benefits (but not necessarily facilities), regardless of whether the service, program, or activity is part of a larger public program. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(1)(ii), (iii).

Secretary Husted's reliance on *Kerrigan v. Philadelphia Bd. of Election*, No. CIV. A. 07-687, 2008 WL 3562521 (E.D. Pa. Aug. 14, 2008) and *Westchester Disabled on the Move, Inc. v. County of Westchester*, 346 F. Supp. 2d 473, 478 (S.D.N.Y. 2004) for the proposition that individuals with disabilities are not denied an equal opportunity to participate as long as they have some access to some aspects of the voting program when viewed in its entirety is unpersuasive here. In *Kerrigan*, the court cited the existing facilities regulation, 28 C.F.R § 35.150, because the physical accessibility of polling locations, existing facilities under the ADA,

was at issue. 2008 WL 3562521, at *11. Nevertheless, the court ultimately held that the board of elections violated the ADA by denying them the same opportunity to vote at their local polling locations as provided to other voters. *Id*. at *18. Although the court in *Westchester Disabled on the Move* analyzed plaintiffs' other options for voting, it did so in the context of its irreparable harm analysis, not in analyzing the merits of plaintiffs' ADA claim. 346 F. Supp. 2d 477-78. Notably, in assessing the plaintiffs' various voting options, the court concluded that even though plaintiffs had various options for voting, and were therefore not totally disenfranchised, the inability to vote at one's assigned polling location, one part of a larger voting program constituted irreparable harm. *Id*.

Finally, as the Supreme Court has cautioned in the context of analyzing access to public benefits under the Rehabilitation Act for individuals with disabilities, "the benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *see id*. at n.21 (approvingly citing the government's statement that "[a]ntidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit"). Highlighting this language in *Lamone*, the Fourth Circuit noted that "we should proceed cautiously to avoid defining a public program so generally that we overlook real difficulties in accessing government services." *Lamone*, 2016 WL 497187, at *6. Yet Secretary Husted asks this Court to look only at the larger voting program and to overlook the inequalities of its absentee voting program. Fortunately, the broad language of Title II of the ADA, requires a more focused analysis of absentee voting itself.

**B.** **Because Ohio affords all other voters the opportunity to vote privately and independently, it must offer this same benefit to Plaintiffs.**

Ohio offers sighted voters the convenience and opportunity to vote absentee without needing to disclose their ballot selections or entrust the accuracy of their votes to a third party. For blind voters, Secretary Husted argues that voting that is neither private nor independent is good enough. "Good enough," however, is not the standard; the ADA guarantees individuals with disabilities nothing short of equal opportunity. *See* 28 C.F.R. § 35.130(b)(1)(ii), (iii).

For this reason, courts throughout the country have held that without the same opportunity to vote privately and independently that is available to all other voters, voters with disabilities are denied their rights under the ADA. See *Lamone*, 2016 WL 497187, at *8-9; *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 197, 199 (2d Cir. 2014); *California Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229, 1238 (N.D. Cal. 2013); *Nat'l Org. on Disability v. Tartaglione*, No. Civ. A. 01-1923, 2001 WL 1231717, at *3-4 (E.D. Pa. Oct. 11, 2001).

The Fourth Circuit has observed that requiring blind voters to obtain assistance to mark their absentee ballots, when sighted voters need not obtain such assistance, creates a "sharp disparity [that] makes obvious that defendants have provided 'an aid, benefit, or service [to disabled individuals] that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.'" *Lamone*, 2016 WL 497187, at *8 (quoting 28 C.F.R. § 35.130(b)(1)(iii)). The district court in *California Council of the Blind* similarly concluded that requiring blind voters to obtain third-party assistance to vote "at best provides these individuals with an inferior voting experience 'not equal to that afforded others." 985 F. Supp. 2d at 1239 (quoting 28 C.F.R. § 35.130(b)(1)(ii)). Private and independent voting is not merely a trivial feature of voting in

Ohio; it is what the public expects.  As the court in *California Council of the Blind* explained:

> On any given election day in the United States, most voters at the polls cast their ballots in private, without threat of interference by poll workers, the government, or curious onlookers.  The provision and maintenance of voting systems that allow for such privacy is a normal function of a government entity.

*Id*. at 1238 (internal quotation marks omitted).

In *Disabled in Action*, the Second Circuit reasoned that requiring individuals with disabilities to obtain assistance to vote is antithetical to the purpose of federal disability rights laws that are intended to "empower individuals with disabilities to maximize employment, economic self-sufficiency, *independence*, and inclusion and integration into society."  752 F.3d at 199 (quoting Rehabilitation Act) (emphasis added by Second Circuit).  In light of Congress' finding in the ADA that "individuals with disabilities . . . have been . . . relegated to a position of political powerlessness in our society," it is particularly critical that individuals with disabilities have an equal opportunity to vote and amplify their political voice.  *Tennessee v. Lane*, 541 U.S. 509, 516 (2004), quoting 42 U.S.C. § 12101(a)(7).

The Sixth Circuit's analysis of the Michigan Constitution's right to a secret vote, relied upon heavily by Secretary Husted, is inapposite here.  *See Nelson v. Miller*, 170 F.3d 641 (6th Cir. 1999).  The plaintiffs in *Nelson* based their ADA and Rehabilitation Act claims entirely on their alleged right to a secret ballot under the Michigan Constitution.  *Id*. at 650.  Unlike the *Nelson* plaintiffs, Plaintiffs claims do "not turn on whether there is a standalone right to vote privately and independently without assistance."  *See Lamone,* 2016 WL 497187, at *8.  Instead, "Plaintiffs' argument is that [Secretary Husted] ha[s] provided such a benefit to non-disabled voters while denying that same benefit to plaintiffs on the basis of their disability."  *Id*.  Thus, unlike *Nelson*, the scope of a statutory or constitutional guarantee of the right to vote privately

and independently is irrelevant.

To the extent the existence of a standalone right to vote privately and independently provides additional support for Plaintiffs' arguments, however, the revision to the Department of Justice's ADA regulations in 2011 (long after *Nelson* was decided) provides such an independent basis.  The revised regulation requires that auxiliary aids and services be provided "in such a way as to protect the privacy and independence of the individual with a disability."  28 C.F.R. § 35.160(b)(2); Nondiscrimination on the Basis of Disability in State and Local Government Services, 75 Fed. Reg. 56,164, 56,184 (Sept. 15, 2010) (codified as 28 C.F.R. pt. 35).  Because accessible absentee voting technology helps voters with disabilities effectively communicate their voting selections to the government, this effective communications regulation applies here. Contrary to Secretary Husted's argument otherwise, a voter's privacy is not protected simply because the person to whom she must disclose her selections is required to keep them secret. The voter's privacy is invaded the moment she must share her selections with any other individual – an invasion of privacy no other voter must endure when voting absentee.  Because Secretary Husted allows all other voters to vote absentee privately and independently, he must ensure that Plaintiffs have an equal opportunity to do the same.

### C.  Even in the context of Ohio's entire voting program, Plaintiffs are still denied significant benefits of the program.

Even if this Court were to accept Ohio's erroneous position that the proper scope of inquiry is Ohio's entire voting program, it should still find that Plaintiffs are denied an equal opportunity to benefit from voting.  By offering the option to vote absentee – from one's home, vacation destination, or out-of-state university, for example – Ohio extends an important benefit to voters that makes it much more convenient, and in some cases altogether possible, to exercise their fundamental right to vote.  For blind voters like Ms. Hindel and Ms. Denning, who have

encountered difficulties arranging for transportation to their polling locations, or Ms. Pierce, who wants the option of voting absentee when she is sick or out of town, this benefit of being able to vote from the convenience of any location is of great import.  *See* ECF #1, ¶¶ 7-9.  The ADA prohibits Ohio from denying Plaintiffs an equal opportunity to access the significant benefit of absentee voting that it offers to all other voters as part of its larger voting program.

Again, the ADA does not require merely "some" opportunity to vote, as Secretary Husted argues, but an "equal" opportunity to do so.  *See* 28 C.F.R. § 35.130(b)(1)(ii), (iii).  As the Second Circuit has explained, individuals with disabilities need not "prove that they have been disenfranchised or otherwise completely prevented from enjoying a service, program, or activity to establish discrimination under . . . Title II."  *Disabled in Action*, 752 F.3d at 198 (internal quotation marks omitted).  To assume that meaningful access requires "merely the opportunity to vote at some time and in some way," the court reasoned, "would render meaningless the mandate that public entities may not afford [] persons with disabilities services that are not equal to that afforded others."  *Id.* at 199 (internal quotation marks omitted).

Other courts have also held that the opportunity to vote at some time and in some way is insufficient if the available methods of voting provide an inferior experience.  *See Kerrigan*, 2008 WL 3562521 at *18 (holding that voters with disabilities must have access to their local polling locations, even though they could vote elsewhere); *Westchester Disabled on the Move*, 346 F. Supp. 2d at 478 (concluding that providing individuals with disabilities limited methods by which to vote "could not reasonably be construed as consistent with providing 'meaningful access' to the voting process, particularly where the alternatives relied upon by the [d]efendants impose additional costs, risks and inconveniences on disabled voters not faced by others"); *see also Am. Council of Blind v. Paulson,* 463 F.Supp.2d 51, 59 (D. D.C. 2006) ("[P]laintiffs do not

need not to prove 'no access' to prevail" on a claim under the similar requirements of the

Rehabilitation Act.).

Because Secretary Husted offers all other voters the opportunity to vote privately and

independently by absentee ballot, an option that encourages and facilitates the exercise of their

right to vote, he violates the ADA by failing to make this same opportunity available to blind

voters. This conclusion holds true whether this Court confines its analysis to access to absentee

voting or to the voting program as a whole.

## II.  PLAINTIFFS' REQUESTED RELIEF IS REASONABLE, APPROPRIATE, AND NECESSARY AND WOULD NOT FUNDAMENTALLY ALTER VOTING IN OHIO.

### A.  Making an accessible method of absentee voting available to Plaintiffs is both an appropriate auxiliary aid or service and a reasonable modification.

Because Plaintiffs' proposed accessible absentee voting systems are appropriate and

necessary auxiliary aids or services, Secretary Husted must implement at least one of these

systems. Title II regulations define "auxiliary aids and services" to include, among other non-

exhaustive examples, "accessible electronic and information technology; or other effective

methods of making visually delivered materials available to individuals who are blind or have

low vision," as well as "other similar services and actions." 28 C.F.R. § 35.104. Because

accessible technology assists blind voters in communicating their selections to the government

by enabling them to independently mark their ballots, accessible absentee voting systems qualify

as auxiliary aids or services.

Accordingly, a government entity must implement an auxiliary aid or service simply

upon a showing that the aid or service is "appropriate" and "necessary," in that it will "afford

individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a

service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1) (stating that a public

entity "shall" provide the auxiliary aid or service); *Prakel v. Indiana*, 100 F. Supp. 3d 661, 683 (S.D. Ind. 2015) (distinguishing mandatory nature of auxiliary aid requirement in effective communications regulation, 28 C.F.R. § 35.160(b)(1), from requirement under 28 C.F.R. § 35.130(b)(7) that modifications be reasonable).   The only limitation on entitlement to an auxiliary aid or service is if the provision of the aid or service would result in a fundamental alteration or constitute an undue financial or administrative burden.  28 C.F.R. § 35.164; see *Prakel*, 100 F. Supp. 3d at 683.  Secretary Husted has not raised the defenses of undue financial or administrative burden in his motion.  He has raised a defense of fundamental alteration for implementing an accessible method of absentee voting, however, he has not shown that Plaintiffs cannot prove any "set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

Secretary Husted has not proposed an alternative that would ensure Plaintiffs an equal opportunity to vote absentee privately and independently, just as all other voters may do.  By contrast, Plaintiffs' proposed accessible absentee voting systems are necessary and appropriate because they will allow Plaintiffs to mark their absentee ballots independently.

Because implementing any of the proposed accessible absentee voting systems would also be reasonable, Secretary Husted would still have to make an accessible system available even if the Court were to view Plaintiffs' requested relief under the rubric of reasonable modification, rather than provision of an auxiliary aid or service.  *See* 28 C.F.R. § 130(b)(7). The Sixth Circuit has defined "reasonableness" in the context of Title I's reasonable accommodation standard[4] as "reasonable in the sense both of efficacious and of proportional to costs."  *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996).  Establishing the

---

[4] It should be noted that although Secretary of State Husted cites Title I's reasonable accommodation standard on page 15 of his memorandum, 42 U.S.C. § 12112(b)(5)(A), the term "reasonable accommodation" appears and is defined only in Title I and is wholly absent from Title II and its implementing regulations.

reasonableness of a modification "need not be onerous."  *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir. 1998).  "For the purposes of a *prima facie* showing, a plaintiff must merely suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."  *Id.* (internal quotation marks omitted).  As the Fourth Circuit has observed, "[d]etermination of the reasonableness of a proposed modification is generally fact-specific."  *Lamone*, 2016 WL 497187, at *9.

At this stage in the litigation, Plaintiffs have made a *prima facie* showing that a plausible reasonable modification exists.  Plaintiffs have alleged that there are at least two available accessible absentee voting systems that could be implemented in Ohio and that both are available.  Compl. ¶¶ 22, 25.  It is necessary to complete discovery to determine what costs may be associated with implementing an accessible absentee voting system, as there is not yet an adequate record.  It is unlikely, however, that any implementation costs would outweigh the great benefit of ensuring that all Ohio residents have an equal opportunity to exercise their fundamental right to vote, given that Plaintiffs have alleged that at least two available systems have already been used successfully in other states' elections.  Compl. ¶¶ 20, 24.  Accordingly, Plaintiffs have more than established for purposes of resolving a motion for judgment on the pleadings that their proposed modification is "plausible" and thus reasonable.[5]

### B.   Conflict with Ohio law does not render a reasonable modification unreasonable, nor may it form the basis of Secretary Husted's fundamental alteration defense.

Plaintiffs have established a violation of the ADA and suggested several accessible absentee voting tools as auxiliary aids or services, or as reasonable modifications that would

---

[5] Secretary Husted raises concerns about the feasibility of implementing an accessible absentee voting system across Ohio's various counties, yet he has not argued the affirmative defense of undue burden in his motion, nor offered any evidence to support his claim.  Furthermore, because Plaintiffs intend to present expert testimony to address this issue, the factual issue of implementation is disputed and should not be ruled upon based only on the pleadings.

provide an equal opportunity to participate in absentee voting.  Secretary Husted  argues that because making an accessible method of absentee voting available to Plaintiffs would require an exception to Ohio's procedures regarding the certification and selection of voting technology,[6] Plaintiffs' proposed modification is unreasonable and a fundamental alteration to the voting program.[7]  Despite acknowledging that accessible online absentee ballot marking tools, such as Maryland's online ballot marking tool, cannot meet the certification criteria under Ohio law because they are "independent marking tool[s] not part of any particular voting system," the Secretary argues that the state's unattainable certification requirement must stand in the way of Plaintiffs' federally-guaranteed civil rights under the ADA.  ECF #20 at 8-9, 19-20.

The Supremacy Clause dictates otherwise and declares that "the Laws of the United States . . . shall be the supreme law of the land . . . anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. Const. art VI, cl. 2.  State law must yield when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (internal quotation marks omitted).

In *Lamone*, the Fourth Circuit addressed this argument.  2016 WL 497187, at *10.  The court concluded that "[t]he mere fact that a procedural requirement has not been met" does not constitute a fundamental alteration; the defendant would need to prove that "the underlying

---

[6] Although Plaintiffs agree that ordering their requested relief would require an exception to Ohio's certification requirements, it is unclear why it would require a shift in which entity ultimately selects the voting technology to be used in each county.  Secretary Husted could choose several accessible absentee voting systems and allow each of Ohio's 88 county boards of elections to select its preferred system.  Nevertheless, to the extent it is relevant, whether any of Plaintiffs' proposed accessible absentee voting systems could meet Ohio's certification or selection requirements is a factually disputed issue that cannot be resolved at this stage.

[7] Although Plaintiffs agree that ordering their requested relief would require an exception to Ohio's certification requirements, it is unclear why it would require a shift in which entity ultimately selects the voting technology to be used in each county.  Secretary Husted could choose several accessible absentee voting systems and allow each of Ohio's 88 county boards of elections to select its preferred system.  Nevertheless, to the extent it is relevant, whether any of Plaintiffs' proposed accessible absentee voting systems could meet Ohio's certification or selection requirements is a factually disputed issue that cannot be resolved at this stage.

substantive purpose of that requirement has not been met" to establish a fundamental alteration. *Id.* at *11. Because the district court had reasonably found that Maryland's online ballot marking tool "is reasonably secure, safeguards disabled voters' privacy, and . . . has been used in actual elections without apparent incident," the Fourth Circuit held that use of the ballot marking tool was not at odds with the purposes of certification. *Id.*

The Fourth Circuit's decision comports with decisions from other circuit courts around the country holding that non-compliance with a state law, in and of itself, cannot constitute a fundamental alteration sufficient to obstruct the ADA's mandate. *See Mary Jo C. v. New York State and Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013) (holding that the ADA could require exceptions be made to New York's filing deadline for disability retirement benefits because "[i]f all state laws were insulated from Title II's reasonable modification requirement solely because they were state laws . . . the ADA would be powerless to work any reasonable modification in any requirement imposed by state law"); *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1232-33 (10th Cir. 2009) (noting that although there was no conflict between state law and the Rehabilitation Act in the case at hand, because "[r]eliance on state statutes to excuse non-compliance with federal laws is simply unacceptable under the Supremacy Clause," the district court was incorrect in assuming that a modification requiring defendants to ignore or violate state law was *per se* unreasonable); *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (holding, in an ADA case involving a state law aimed at preventing the spread of rabies, that although "courts will not second-guess the public health and safety decisions of state legislatures, . . . when Congress has passed antidiscrimination laws such as the ADA which require reasonable modifications to public health and safety policies, it is incumbent upon the courts to insure that the mandate of federal law is achieved"); *Quinones v. City of Evanston, Ill.*,

58 F.3d 275, 277 (7th Cir. 1995) ("[The defendant] believes that it is compelled to follow the directive from the state, but the Supremacy Clause of the Constitution requires a different order of priority.  A discriminatory state law is not a defense to liability under federal law; it is a *source* of liability under federal law.") (emphasis in original).

This Court has ordered reasonable modifications to Ohio's absentee voting process when necessary to ensure that voters with disabilities have an equal opportunity to vote, even when those modifications were in conflict with Ohio law and the Ohio Secretary of State's directives. In *Ray v. Franklin County Bd. of Elections*, this Court ordered the Secretary of State and county board of elections to modify their policies to allow a homebound voter with a disability to correct deficiencies in her absentee ballot without appearing in-person at the board's office. 2008 WL 4966759, at *6 (S.D. Ohio 2008). Similarly, in *Mooneyhan v. Husted*, the Secretary of State and county board of elections were ordered to count the ballot of a voter with a disability whose ballot was postmarked after the statutory deadline because the defendants had failed to make a reasonable modification of their policies. 2012 WL 5834232, at *6 (S.D. Ohio 2012).

At this stage in the litigation, Secretary Husted has not presented any evidence suggesting that making an accessible absentee voting tool available would thwart any of the purposes of the Ohio's certification requirements.  Therefore, he is left only to argue that the Court cannot order implementation of such a system because it would violate the letter of Ohio law.  Conflict with a state procedural requirement, without evidence of substantive harm, cannot support the state's affirmative defense of fundamental alteration, nor render an otherwise reasonable modification unreasonable.  Accordingly, Secretary Husted may not frustrate the ADA's mandate that he provide Plaintiffs an equal opportunity to vote absentee privately and independently.

## **CONCLUSION**

For the reasons set forth above, this Court should deny Defendant Ohio Secretary of State

Jon Husted's *Motion for Judgment on the Pleadings* and allow Plaintiffs' claims to proceed.

Respectfully submitted,


s/Jason C. Boylan
Jason C. Boylan (0082409), Trial Attorney
Kristen Henry (0082382)
DISABILITY RIGHTS OHIO
Ohio Disability Rights Law and Policy Center, Inc.
50 W. Broad St., Suite 1400
Columbus, Ohio  43215
Tel:  (614) 466-7264
Fax:  (614) 644-1888
jboylan@disabilityrightsohio.org
khenry@disabilityrightsohio.org

Daniel F. Goldstein (admitted *pro hac vice*)
Jessica P. Weber (admitted *pro hac vice*)
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland  21202
Tel:  (410) 962-1030
Fax:  (410) 385-0869
dfg@browngold.com
jweber@browngold.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of February, 2016 a copy of the foregoing,

*Plaintiffs' Opposition to Defendant Ohio Secretary of State Jon Husted's Motion for Judgment*

*on the Pleadings*, was served on all counsel of record via the Court's electronic filing system.

s/Jason C. Boylan

Jason C. Boylan (0082409), Trial Attorney

{00251859-12}