**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

SHELBI HINDEL, *et al.*,       *

      Plaintiffs,       *

v.       *      Civil Action No. 2:15-cv-3061

JON A. HUSTED,       *

      Defendant.       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION FOR PERMANENT INJUNCTION

Plaintiffs Shelbi Hindel, Barbara Pierce, Marianne Denning, and the National Federation of the Blind, Inc. ("NFB") (collectively "Plaintiffs"), by their undersigned counsel, pursuant to 42 U.S.C. § 12188(a), move the Court to issue a permanent injunction against Defendant Jon A. Husted, in his official capacity as Ohio Secretary of State, prohibiting Mr. Husted from violating Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and requiring him to offer Plaintiffs in time for use in the November 8, 2016 general election: (1) a private and independent method of mail-in absentee voting; and (2) a voter services website that offers Plaintiffs all of the same information and the same transactions, with substantially equivalent ease of use.  The grounds for this motion are set forth in the attached Memorandum of Law and accompanying exhibits.

WHEREFORE, Plaintiffs request that their Motion be granted and that the Court issue a permanent injunction against Defendant.

Respectfully submitted,


_____/s/_____
Jason Boylan (0082409), Trial Attorney
Kristen Henry (0082382)
DISABILITY RIGHTS OHIO
Ohio Disability Rights Law and Policy Center, Inc.
50 W. Broad St., Suite 1400
Columbus, OH 43215
Tel: (614) 466-7264
Fax: (614) 644-1888
jboylan@disabilityrightsohio.org
khenry@disabilityrightsohio.org

Daniel F. Goldstein (admitted *pro hac vice*)
Jessica P. Weber (admitted *pro hac vice*)
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
dfg@browngold.com
jweber@browngold.com

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

SHELBI HINDEL, *et al.*,                          *

      Plaintiffs,                          *

v.                                                *        Civil Action No. 2:15-cv-3061

JON A. HUSTED,                                    *

      Defendant.                          *

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PERMANENT INJUNCTION

---

Daniel F. Goldstein (admitted *pro hac vice*)
Jessica P. Weber (admitted *pro hac vice*)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
dfg@browngold.com
jweber@browngold.com

Jason C. Boylan (0082409), Trial Attorney
Kristen Henry (0082382)
Disability Rights Ohio
Ohio Disability Rights Law and Policy
Center, Inc.
50 W. Broad St., Suite 1400
Columbus, OH 43215
Tel: (614) 466-7264
Fax: (614) 644-1888
jboylan@disabilityrightsohio.org
khenry@disabilityrightsohio.org

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF FACTS ...................................................................................................2

    I.   Absentee Voting.........................................................................................................2

    II.  Voter Services Website ..............................................................................................8

LEGAL STANDARD...........................................................................................................11

ARGUMENT .......................................................................................................................12

    I.   Because Secretary Husted denies Plaintiffs an equal opportunity to access the programs, services, activities, or benefits of absentee voting and Ohio's voter services website, Plaintiffs will prevail on the merits of their claims at trial ...................................12

        A.   Absentee voting.................................................................................................14

        B.   Voter services website.......................................................................................20

    II.  Plaintiffs have suffered and will continue to suffer an irreparable injury if Secretary Husted continues to violate their federal civil right to equal opportunity..........................21

    III. Remedies available at law, such as monetary damages, are inadequate to compensate for Plaintiffs' injury .......................................................................................23

    IV. The balance of hardships tips decidedly in favor of granting Plaintiffs' requested equitable relief ..........................................................................................................24

    V.  A permanent injunction serves the public interest. ...........................................................27

CONCLUSION....................................................................................................................27

CERTIFICATE OF SERVICE ............................................................................................29

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page No.**

*Am. Booksellers Found. for Free Expression v. Strickland,*
    512 F. Supp. 1082 (S.D. Ohio 2007) ...............................................................................23

*Am. Civil Liberties Union of Kentucky v. McCreary Cty., Ky.,*
    607 F.3d 439 (6th Cir. 2010) .....................................................................................11, 12

*Babcock v. Michigan,*
    812 F.3d 53 (6th Cir. 2016) ............................................................................................12

*Brinkman v. Budish,*
    692 F. Supp. 2d 855 (S.D. Ohio 2010) .........................................................................23

*California Council of the Blind v. Cnty. of Alameda,*
    985 F. Supp. 2d 1229 (N.D. Cal. 2013) ..................................................................15, 16

*Cehrs v. Ne. Ohio Alzheimer's Research Ctr.,*
    155 F.3d 775 (6th Cir. 1998) .........................................................................................17

*CSX Transp., Inc. v. Tennessee State Bd. of Equalization,*
    964 F.2d 548 (6th Cir. 1992) .........................................................................................22

*Deck v. City of Toledo,*
    29 F. Supp. 2d 431 (N.D. Ohio 1998) ...........................................................................27

*Disabled in Action v. Bd. of Elections in City of New York,*
    752 F.3d 189 (2d Cir. 2014) ....................................................................................15, 16

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) .......................................................................................................12

*EEOC v. Chrysler Corp.,*
    733 F.2d 1183 (6th Cir. 1984) .......................................................................................22

*Helen L. v. DiDario,*
    46 F.3d 325 (3d Cir. 1995) ............................................................................................12

*Jones v. City of Monroe, MI,*
    341 F.3d 474 (6th Cir. 2003) ...................................................................................13, 27

*Marcus v. Kansas Dep't of Revenue,*
    170 F.3d 1305 (10th Cir. 1999) .....................................................................................12

*Martin v. Metro. Atlanta Rapid Transit Auth.*,
    225 F. Supp. 2d 1362 (N.D. Ga. 2002) ........................................................................20, 21

*Mooneyhan v. Husted*,
    No. 3:12–cv–379, 2012 WL 5834232 (S.D. Ohio Nov. 16, 2012) ..................................14, 15

*Nat'l Fed. of the Blind v. HRB Digital LLC*,
    No. 1:13-cv-10799-GAO (D. Mass Mar. 25, 2014) ............................................................11

*Nat'l Fed. of the Blind v. Lamone*,
    813 F.3d 494 (4th Cir. 2016) ................................................................................ 14, 15, 16

*Nat'l Fed of the Blind v. Lamone*,
    No. RDB-14-1631, 2014 WL 4388342 (D. Md. Sept. 4, 2014)........................................22, 23

*Nat'l Org. on Disability v. Tartaglione*,
    No. Civ. A. 01-1923, 2001 WL 1231717 (E.D. Pa. Oct. 11, 2001) ......................................15

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2012)..............................................................................24, 25, 26, 27

*Olmstead v. L.C.*,
    527 U.S. 581 (1999) ...........................................................................................................13

*Ray v. Franklin Cty. Bd. of Elections*,
    No. 2:08-cv-1086, 2008 WL 4966759 (S.D. Ohio Nov. 17, 2008)........................................14

*Sambo's of Ohio, Inc. v. City Council of City of Toledo*,
    466 F. Supp. 177 (N.D. Ohio 1979)....................................................................................23

*Sellers v. Univ. of Rio Grande*,
    838 F. Supp. 2d 677 (S.D. Ohio 2012)................................................................................21

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) ..............................................................................................22

*Tennessee v. Lane*,
    541 U.S. 509 (2004) ...........................................................................................................27

*United Steel, Paper & Forestry v. Kelsey-Hayes Co.*,
    750 F.3d 546 (6th Cir. 2014) .............................................................................................. 12

## Statutes

42 U.S.C. § 12101 ................................................................................................1, 16, 27

42 U.S.C. § 12102 ...................................................................................................... 13

42 U.S.C. § 12131 ...................................................................................................... 12

42 U.S.C. § 12132 ...................................................................................................... 12

42 U.S.C. § 12188 ..................................................................................................19, 22

52 U.S.C. §§ 20301-20310 ...........................................................................................6

## Regulations

28 C.F.R. § 35.104 ...................................................................................................... 17

28 C.F.R. § 35.130 ............................................................................................ *passim*

28 C.F.R. § 35.160 ...........................................................................................13, 14, 21

28 C.F.R. § 35.164 ...................................................................................................... 18

75 Fed. Reg. 43460 .................................................................................................... 20

## Other Authorities

*Access Denied: Barriers to Online Voter Registration for Citizens with Disabilities*,
    ACLU and Center for Accessible Technology, https://www.aclu.org/report/access-denied-barriers-online-voter-registration-citizens-disabilities (last visited Mar. 23, 2016) ................... 9

*Elections/Voters/Candidates Publications*, Jon Husted, Ohio Secretary of State,
    http://www.sos.state.oh.us/SOS/publications.aspx#Elections (last visited Mar. 23, 2016)........ 9

*Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and
    Peapod, LLC Under the Americans with Disabilities Act*, DJ No. 202-63-169
    (Nov. 17, 2014), *available at* http://www.justice.gov/file/163956/download .............................. 11

*Settlement Agreement Between the United States of America and EdX Inc. Under the
    Americans with Disabilities Act*, DJ No. 202-36-255 (April 2, 2015), *available at*
    http://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/04/02/edx_settlement_agreement.pdf ................................................. 11

*Settlement Agreement Between the United States of America and the National Museum of Crime
    and Punishment Under the Americans with Disabilities Act*, DJ No. 202-16-189 (Jan. 13, 2015),
    *available at* http://www.justice.gov/file/317596/download .......................................................... 11

*Update Your Voter Registration Information*, Jon Husted, Ohio Secretary of State,
    https://olvr.sos.state.oh.us/ovru/Modify.aspx (last visited Mar. 23, 2016) ............................... 9

Plaintiffs seek to enjoin Jon A. Husted, in his official capacity as Ohio Secretary of State, from denying individuals with disabilities an equal opportunity to cast their votes by absentee ballot and to access the Secretary of State's voter services website, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.

Plaintiffs' claims that Defendant violates the ADA by denying them equal access to Ohio's programs and activities are meritorious.  Without an accessible method of absentee voting, Plaintiffs are denied the opportunity Ohio affords voters without disabilities: to vote absentee privately and independently.  Without full access to the voter services website, Plaintiffs are denied an equal opportunity to (1) stay informed about the voting process; and (2) obtain, complete, and submit required forms.  Secretary Husted cannot prove the affirmative defense of undue burden: the evidence will establish that three accessible absentee voting tools are readily available at little to no cost, and that making the voter services website accessible is not difficult or expensive.  Nor would the requested relief fundamentally alter Ohio's voting program or services.

This deprivation of Plaintiffs' civil rights causes them irreparable harm.  Conversely, although adopting an accessible absentee voting system and correcting the website in advance of the November election may require some effort by the Secretary, Plaintiffs' requested relief will not create a hardship or jeopardize the security or operation of the election.  Thus, the balance of hardships tips decidedly in Plaintiffs' favor.  Additionally, enforcing the ADA's goal of ensuring equal opportunities for individuals with disabilities to participate in civic life and exercise their fundamental right to vote through an injunction serves the public interest.

Accordingly, this Court should issue an injunction requiring Secretary Husted to offer an accessible method of absentee voting that allows blind voters to vote privately and

independently, and an accessible voter services website that meets widely accepted accessibility standards in time for use by blind voters in advance of the November 8, 2016 general election.

## STATEMENT OF FACTS

At trial, Plaintiffs will prove the following facts:

## I.     Absentee Voting

Any registered voter in Ohio can vote absentee by mail[1] without the need to offer a reason or excuse.  Voters without disabilities need not visit any particular location to cast their votes secretly; instead, they can vote absentee privately and independently by marking Ohio's paper absentee ballots by hand at home or in any other private setting of their choosing.  Ohio, however, does not extend this option to blind voters.  Because Secretary Husted offers only paper absentee ballots that Plaintiffs cannot independently complete, Plaintiffs must forfeit their privacy and independence if they wish to vote absentee.  Plaintiffs wish to have the same opportunity to vote absentee privately and independently that Secretary Husted offers to all other voters.

Ms. Hindel wants to vote absentee because she finds it difficult to reach her distant polling location.  Ms. Denning has also had difficulty arranging for transportation to her polling location and has sometimes missed voting in past elections when her husband, her primary source of transportation, has been away.  Ms. Pierce would like the option of voting absentee in case she is ill or out-of-town during an election.  Ms. Hindel, Ms. Denning, and Ms. Pierce wish to access, in time for the November 2016 election, the convenient option of absentee voting on

---

[1] Throughout the remainder of this memorandum, Plaintiffs refer to absentee voting by mail simply as absentee voting.  Although Ohio considers certain types of early voting in which voters visit designated polling locations to cast their votes a form of absentee voting, for the purposes of this case, Plaintiffs are focused on absentee voting that does not require voters to visit any particular location to cast their votes.

the same terms that all other voters enjoy: privately and independently.

Although Secretary Husted will likely present testimony at trial that election officials are permitted to travel to voters' homes to assist them with marking their ballots, Plaintiffs would still have to disclose their ballot selections to other people and rely on these individuals to correctly mark their choices for them (with no way to confirm the accuracy of the marked ballot) if they were to receive this assistance.  Furthermore, the testimony at trial will reveal that such assistance is not available when blind voters are out-of-state during an election.  Therefore, relying on an election official to mark a voter's absentee ballot for her is no substitute for enabling the voter to mark her own ballot privately and independently.

Fortunately, technological innovations now make private and independent absentee voting a possibility for blind voters.  There are several available accessible absentee voting tools[2] that allow blind voters to review and mark their absentee ballots electronically using their own screen access software.[3]

Plaintiffs will present testimony at trial about three readily available, accessible absentee voting tools that would allow Plaintiffs to review and mark their absentee ballots privately and independently using screen access software:  Maryland's online ballot marking tool ("the Maryland tool"), Prime III, and the Alternate Format Ballot ("AFB").  Using any of these systems, Plaintiffs could vote absentee without having to disclose their voting selections to any other individual.

Karl Belanger, an Access Technology Specialist at the National Federation of the Blind,

---

[2] Plaintiffs use the terms "tool" and "system" interchangeably when discussing accessible absentee voting options, but none of Plaintiffs' proposed options should be mistaken for a comprehensive election system; the proposed options are merely tools for converting an absentee ballot into an electronic format that can be marked on a computer and printed.

[3] Screen access software transmits textual information on a computer, tablet, or smartphone screen into an audio output or refreshable Braille display pad.

is an expert in accessible technology who will testify that the Maryland tool, Prime III, and the AFB are all accessible to blind individuals who use reasonably up-to-date screen access software with a computer, tablet, or smart phone operating system and browser.

Juan E. Gilbert, Ph.D., the Andrew Banks Family Preeminence Endowed Professor and Chair of the Computer & Information Science & Engineering Department at the University of Florida, is an expert in Human-Computer Interaction, User Experience, and Usability, generally, and more specifically in: Voting System Usability, Voting System Security, and Voting System Design and Implementation.  Dr. Gilbert will testify that the Maryland tool, Prime III, and the AFB do not add any additional security vulnerabilities to absentee voting in Ohio that would affect the integrity of the election results.

Dr. Gilbert will also testify that it is feasible to implement any of Plaintiffs' proposed systems throughout all of Ohio's counties in time for the November 2016 election.  He will explain that although different counties use different voting systems to operate their elections, counties will not need to change their existing voting systems to implement any of the proposed accessible absentee voting tools.  Because all of Ohio's counties use modern election software systems, the information needed to generate absentee ballots (*e.g.*, candidate names, ballot questions, and ballot formatting and design information) is maintained electronically. Depending on how each county's election software system organizes and formats this ballot-generating information, the data can either be imported directly into the Maryland tool, Prime III, or the AFB, it can be converted into a format that is usable by these systems, or the information can be manually entered into the absentee voting tool.  Once the absentee voting tool has the necessary ballot-generating data, it can automatically produce any number of ballot styles for each county.  As the creator of Prime III, Dr. Gilbert will provide additional detail about how

Prime III could be implemented statewide within a matter of weeks.  He will testify that he has done similar work converting ballot-populating data formats in other states.

Plaintiffs will also establish at trial that the Ohio Secretary of State has successfully undertaken the task of converting data from the counties' election systems from one format to another in the past.  When the Secretary sought a more efficient method by which the 88 county boards of elections could share their election results with the Secretary for posting on the Secretary's website, his office enlisted the election system vendors for assistance.  The election system vendors agreed to enable their systems to convert the election results data into a format that could be imported directly into the Secretary's electronic database.

Plaintiffs will also call John Schmitt, the creator of the AFB, to testify.  Mr. Schmitt will explain how the AFB has been used successfully statewide in all elections in Oregon since 2008. He will also offer information about how the AFB has worked with Oregon's election software systems and how it could be modified without great difficulty to accept ballot-generating data from Ohio's various election systems.

With respect to Maryland's tool, the parties have stipulated that voters with disabilities used Maryland's uncertified tool in the November 2014 general election without incident.  The Maryland Board of Elections received no formal complaints about the tool during the election and the absentee ballots marked and printed using the tool were included in the election results. The Premier AccuVote TS election system was in use when Maryland employed the tool in November 2014.  Plaintiffs will establish at trial that 40 of Ohio's 88 counties currently use this same vendor's election system.

Delivering the electronic absentee ballots to voters through any of the proposed accessible absentee voting systems would not be difficult.  Secretary Husted's office currently

maintains an electronic centralized voter registration database for all registered voters in the state and hosts an online change of voter registration form on his website that allows voters to change their address. Given this existing framework, Dr. Gilbert and Mr. Schmitt will testify that it would be easily achievable for Secretary Husted to enable voters to access their electronic absentee ballots through a link on his website or on the county boards of elections' websites. Voters could simply enter their street address or other identifying information and the voter registration database would identify the correct ballot style to deliver. Alternatively, Secretary Husted or the county boards of elections could email voters with disabilities the appropriate electronic ballot.

Dr. Gilbert and Mr. Schmitt will testify that voters using the Maryland tool, Prime III, or the AFB would mark their absentee ballots on their computers, tablets, or smart phones. Voters could then print their ballots, place them into the identification envelopes provided by their local boards of elections, and then mail the stuffed identification envelope back in the carrier envelope also provided by their county boards of elections for returning absentee ballots. Blind voters could independently print their ballots and stuff and seal their identification envelopes; if they needed assistance signing the envelope, they could obtain such assistance without sacrificing the secrecy of their votes.

With respect to how these accessible ballots would be counted by the county boards of elections, Dr. Gilbert and Mr. Schmitt will testify that the counting would require no new methodology. Counties could use bipartisan teams to manually copy the voter's ballot onto a ballot that can be run through the existing voting system — a method already used to tabulate ballots received by voters covered under the Uniformed and Overseas Civilian Absentee Voting Act of 1986 ("UOCAVA"), 52 U.S.C. §§ 20301-20310. Indeed, the county boards of elections

also routinely use this manual copying method for regular absentee ballots that cannot be counted automatically because of voter error or damage to the ballot.  The testimony will reveal that bipartisan manual ballot duplication is an easy and reliable method of tabulating votes.  In addition, the Maryland tool and AFB are currently designed to print a barcode on the printed ballot that encapsulates the voter's selections.  When the ballot is returned to the county board of elections, election staff could scan the barcode to generate a ballot that is readable by the county's respective voting system.  Dr. Gilbert will testify that the barcode feature could also easily be enabled for use with Prime III if requested.  Dr. Gilbert will also testify that for counties that use optical scanners to count ballots, it is possible, at least with Prime III, to have the printed ballot follow the same format as other absentee ballots so that the printed ballots can be read directly by the optical scanner without the need for transposing the selections onto a new ballot.  Finally, he will explain that counties could also use advanced optical character recognition ("OCR") software to tally the printed ballots.

As to cost, Prime III is open source technology and thus available to download for free. If modifications are necessary to implement Prime III throughout the state, Dr. Gilbert's team or others, including in-house employees, could accomplish this.

Mr. Schmitt will testify that it would cost around $100,000 to $120,000 to write the code necessary to allow the AFB to accept ballot-generating data from all of Ohio's counties, regardless of the voting software system used in each county. After that initial cost, his company, Five Cedars, would charge approximately $1,000 to $2,000 per election, per county to cover all services performed by his company during an election, including technical support for election staff.

With respect to Maryland's tool, the parties have stipulated that the software for

Maryland's tool is open source and thus can be downloaded at no cost.  Dr. Gilbert will testify that if any changes need to be made to the software to be implemented in counties that do not use the Premier AccuVote election system, as with Prime III, a computer programmer would be able to write the code to convert ballot-generating data into a format that is readable by the Maryland tool.  Again, the work could also be done in-house.

Finally, Dr. Gilbert will testify that the United States Election Assistance Commission's ("EAC") certification process is of no relevance to the Maryland tool, Prime III, or the AFB given that they are ballot marking tools, rather than election systems.  He will explain that the proposed marking tools are no different from a pen or a printer, in terms of their role in the voting process, and thus do not qualify for EAC certification, particularly because they are not used to count votes.

Although Ohio's county boards of elections shoulder much of the responsibility for absentee voting, Plaintiffs will establish at trial that Secretary Husted has the authority to direct the manner by which county boards of elections administer absentee voting.  Secretary Husted issues binding directives to the local boards of elections and may remove members of the boards of elections who refuse to comply with his directives.  For example, Plaintiffs will establish that when members of the Montgomery County Board of Elections refused to follow Secretary Husted's directive regarding the days and hours for absentee voting in the 2012 general election, Secretary Husted removed those members from the board.

## II.     Voter Services Website

Mr. Husted's office operates a voter services website, www.sos.state.oh.us/SOS/elections.aspx, that offers Ohio voters extensive information about voting procedures and policies, candidates, new voting initiatives, election results and data, campaign finance information, and upcoming elections.  The website also provides voters with a

number of publications and forms, including the Voter Registration and Absentee Ballot Request forms and the Voter Access Guide, Voter Registration Instructions, and Guide to Voting in Ohio publications. *See Elections/Voters/Candidates Publications*, Jon Husted, Ohio Secretary of State, http://www.sos.state.oh.us/SOS/publications.aspx#Elections (last visited Mar. 23, 2016). Voters who wish to change their voter registration information can do so online using the voter services website. *See Update Your Voter Registration Information*, Jon Husted, Ohio Secretary of State, https://olvr.sos.state.oh.us/ovru/Modify.aspx (last visited Mar. 23, 2016).

In February 2015, the ACLU and Center for Accessible Technology published a report, *Access Denied: Barriers to Online Voter Registration for Citizens with Disabilities*,[4] explaining the need for accessible online voter registration for voters with disabilities and assessing the accessibility of several states' voter services websites. The report included an assessment of Ohio's voter services website and found that Ohio's website failed in seven out of nine categories of accessibility: forms; screen reader access; semantic organization; skip navigation; alt text; keyboard access; and text size and scaling.

Sharron Rush, Executive Director of Knowbility, Inc., a nonprofit organization that is a leader in advocacy and training for web and digital technology accessibility, and an expert in accessible technology, reviewed the ACLU and Center for Accessible Technology's report and conducted her own testing of Ohio's voter services website to determine if it was accessible to blind individuals using screen access software. Her initial testing of the website found many of the same problems identified in the ACLU and Center for Accessible Technology's report. In particular, she found that the website used many graphics that are not properly labeled, rendering them incomprehensible to a screen reader. She also found that the website lacked a heading

---

[4] *Available at* https://www.aclu.org/report/access-denied-barriers-online-voter-registration-citizens-disabilities.

9

structure that would enable a screen reader to move efficiently within the page and had

improperly designed menus that could not be expanded using screen access software.  These

issues created an incomprehensible experience for a blind user attempting to navigate through

the website using screen access software.  Ms. Rush also found that the website had various

items on its pages improperly ordered, causing a screen reader user to jump to different parts of a

given page when trying to read through the page from top to bottom.

Ms. Rush also assessed two of the forms on the voter services website: (1) the Voter

Registration and Information Update Form

(http://www.sos.state.oh.us/sos/upload/elections/forms/4010.pdf); and (2) the Application for

Absentee Voter's Ballot (http://www.sos.state.oh.us/sos/upload/elections/forms/11-A.pdf).  She

found that both forms lacked the basic tagging structure that enables screen readers to process

the content.  She found that the Voter Registration and Information Update Form contained

incorrectly ordered form controls and many items improperly labeled as images.  In addition, the

Secretary had incorrectly labeled many of the form fields.  For example, screen access software

read one checkbox as "Check18Yes" and read the driver's license field as "TextLice."  She

found that the Application for Absentee Voter's Ballot was not interactive, meaning that a user

would have to print the form and fill it out manually.  Such a method of completing a form is

completely inaccessible to a blind user.

Following the filing of the present lawsuit, the Secretary performed a limited remediation

of his website.  Ms. Rush reviewed the website again on both February 17 and February 29,

2016.  This subsequent review of the website revealed that the website continues to violate

several important Web Content Accessibility Guidelines ("WCAG"), which is the de facto

accepted industry standard for web accessibility.[5]  In fact, she will testify that as further updates were made to the website between February 17 and 29, the website became even less accessible. In addition to problems with headings and labels that make the website extremely difficult for a blind user to navigate, Ms. Rush also found that text is often conveyed within images throughout the website.  Because screen access software cannot read images, this text is totally inaccessible to blind users.  Ms. Rush also found that several other issues throughout the website prevent blind users from enjoying equivalent access to information and ease of use.

Ms. Rush will testify that even after the Secretary's limited remediation attempt, the voter services website, including its forms, still fails to offer blind individuals using screen access software all of the same information and the same transactions, with substantially equivalent ease of use, as it offers to sighted users.

## LEGAL STANDARD

The standards for a permanent injunction and preliminary injunction are essentially the same, except that rather than show a likelihood of success on the merits, Plaintiffs must actually succeed on the merits of their claim.  *Am. Civil Liberties Union of Kentucky v. McCreary Cty.,*

---

[5] The U.S. Department of Justice has required compliance with the WCAG 2.0 AA standard. *See, e.g.*, *Nat'l Fed. of the Blind v. HRB Digital LLC*, No. 1:13-cv-10799-GAO (D. Mass Mar. 25, 2014), available at http://www.ada.gov/hrb-cd.htm (consent decree in which the United States was a party); *Settlement Agreement Between the United States of America and EdX Inc. Under the Americans with Disabilities Act*, DJ No. 202-36-255 (April 2, 2015), *available at* http://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/04/02/edx_settlement_agreement.pdf; *Settlement Agreement Between the United States of America and the National Museum of Crime and Punishment Under the Americans with Disabilities Act*, DJ No. 202-16-189 (Jan. 13, 2015), *available at* http://www.justice.gov/file/317596/download (appendix citing WCAG 2.0 AA standard is available at http://www.justice.gov/file/317591/download); *Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and Peapod, LLC Under the Americans with Disabilities Act*, DJ No. 202-63-169 (Nov. 17, 2014), *available at* http://www.justice.gov/file/163956/download.

11

*Ky.*, 607 F.3d 439, 445 (6th Cir. 2010).  To obtain a permanent injunction, Plaintiffs must

establish:

> (1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*United Steel, Paper & Forestry v. Kelsey-Hayes Co.*, 750 F.3d 546, 559 (6th Cir. 2014), *reh'g*

*granted and opinion vacated on different grounds*, 795 F.3d 525 (6th Cir. 2015) (quoting *eBay*

*Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

## ARGUMENT

**I.   Because Secretary Husted denies Plaintiffs an equal opportunity to access the programs, services, activities, or benefits of absentee voting and Ohio's voter services website, Plaintiffs will prevail on the merits of their claims at trial.**

Secretary Husted's failure to provide blind voters equivalent access to absentee voting

and the voter services website violates Title II of the ADA, which requires that "[n]o qualified

individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

to discrimination by any such entity."  42 U.S.C. § 12132.  Defendant is a public entity within

the scope of Title II.  42 U.S.C. § 12131(1)(B).

In providing services such as a website or absentee voting, Secretary Husted must afford

the individual Plaintiffs "an opportunity to participate in or benefit from the aid, benefit, or

service that is . . . equal to that afforded others."  28 C.F.R. § 35.130(b)(1)(ii). [6]  Indeed,

---

[6] The regulations implementing Title II of the ADA "carry the force of law" because Congress required the Department of Justice to model these regulations after the existing Section 504 regulations.  *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995); *see Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1307 n.1 (10th Cir. 1999); *accord Babcock v. Michigan*, 812 F.3d 531, 543 (6th Cir. 2016) (noting that the Title II regulations are entitled to "controlling weight"

Secretary Husted must provide Plaintiffs an aid, benefit, or service that is "as effective in affording equal opportunity" as is provided to others.  28 C.F.R. § 35.130(b)(1)(iii).

Public entities are also required to provide "appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."  28 C.F.R. § 35.160(b)(1).  The aids and services must be provided to "protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).  Therefore, the Secretary must provide Plaintiffs an opportunity to participate in and benefit from the absentee voting service, program, or activity and voter services website that is equal to and as effective as that afforded to individuals without disabilities.

To prove a violation of the ADA, Plaintiffs must establish that: (1) they have disabilities; (2) they are otherwise qualified to receive the benefits of the public service, program, or activity at issue; and (3) they were excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disabilities.  *Jones v. City of Monroe, MI*, 341 F.3d 474, 477 (6th Cir. 2003), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012) (en banc).  Plaintiffs will easily establish the first and second prongs at trial.  Because they are blind, Ms. Hindel, Ms. Pierce, Ms. Denning, and other NFB members all have a physical impairment "that substantially limits [the] . . . major life activit[y]" of seeing and thus have a "disability" under the ADA.  42 U.S.C. § 12102.  Furthermore, because Ms. Hindel, Ms. Pierce, Ms. Denning, and many other

---

and relying on the regulations to determine the scope of the ADA's language).  At the very least, the Supreme Court has stated that the Title II ADA regulations "warrant respect" and that "the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  *Olmstead v. L.C.*, 527 U.S. 581, 597-98 (1999) (internal quotation marks omitted).

NFB members are registered to vote in Ohio, they are eligible and thus "qualified" to receive the benefits of voting by absentee ballot and using the voter services website to access information and complete forms in advance of the November 2016 election.

Plaintiffs will also satisfy the third element of their claim. Ms. Hindel, Ms. Pierce, Ms. Denning, and many NFB members have been denied the right to vote absentee and to use the voter services website in a manner that is "equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). The only method of absentee voting that Secretary Husted currently offers, a paper absentee ballot, is "not as effective in affording equal opportunity" and does not "protect the privacy and independence of the individual with a disability" because Plaintiffs must sacrifice the privacy and independence of their ballots in order to vote absentee. 28 C.F.R. § 35.130(b)(1)(iii), § 35.160(b)(2).

### A.  Absentee voting

Because Secretary Husted offers private and independent absentee voting as a service, program, or activity available to all Ohio voters, he must offer voters with disabilities an equal opportunity to access and benefit from this service, program, or activity.[7] *See Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494, 504 (4th Cir. 2016) (holding that Maryland's absentee voting program is a distinct service, program, or activity to which voters with disabilities must have an equal opportunity to access because "it is far more natural to view absentee voting – rather than the entire voting program – as the appropriate object of scrutiny for compliance with the ADA"); *see also Ray v. Franklin Cty. Bd. of Elections*, No. 2:08-cv-1086, 2008 WL 4966759, at *2-6 (S.D. Ohio Nov. 17, 2008) (applying ADA to Ohio's absentee voting process); *Mooneyhan v.*

---

[7] In their Opposition to Secretary Husted's Motion for Judgment on the Pleadings, Plaintiffs addressed the Secretary's erroneous claims about the scope of review and what "equal opportunity" entails in this context. See Pls.'s Opp'n at 5-14. Accordingly, rather than repeat those arguments here, Plaintiffs incorporate them by reference.

*Husted*, No. 3:12–cv–379, 2012 WL 5834232, at *3-5 (S.D. Ohio Nov. 16, 2012) (same). Like other Ohio voters, Plaintiffs must have the option of voting absentee privately and independently if they are traveling during an election, too ill to vote in person, unable to secure transportation to the poll, or simply desire the opportunity to vote at a time and place most convenient for them.

Although Ohio offers all voters without disabilities the opportunity to vote absentee privately and independently, by making available only a paper absentee ballot, it requires Plaintiffs to obtain sighted assistance to participate in absentee voting, thereby sacrificing the privacy of their ballots. When blind voters must rely on the kindness, availability, honesty, and accuracy of a third party to mark their absentee ballots for them, they are denied an equal opportunity to participate in and enjoy the benefits of absentee voting. Courts throughout the country have held that requiring voters with disabilities to obtain third-party assistance to vote, when all other voters can vote privately and independently, violates the ADA. *See Lamone*, 813 F.3d at 506-07; *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 197, 199 (2d Cir. 2014); *California Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1238 (N.D. Cal. 2013); *Nat'l Org. on Disability v. Tartaglione*, No. Civ. A. 01-1923, 2001 WL 1231717, at *3-4 (E.D. Pa. Oct. 11, 2001).

The Fourth Circuit has observed that requiring blind voters to obtain assistance to mark their absentee ballots, when sighted voters need not obtain such assistance, creates a "sharp disparity [that] makes obvious that defendants have provided 'an aid, benefit, or service [to disabled individuals] that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.'" *Lamone*, 813 F.3d at 506 (quoting 28 C.F.R. § 35.130(b)(1)(iii)). The district court in *California Council of the Blind* similarly concluded that requiring blind voters to obtain third-

party assistance to vote "at best provides these individuals with an inferior voting experience 'not equal to that afforded others' . . . [because] [b]lind and visually impaired voters are forced to reveal a political opinion that others are not required to disclose." *Id.* at 1239 (quoting 28 C.F.R. § 35.130(b)(1)(ii)).

Private and independent voting is not merely a trivial feature of voting in Ohio; it is what the public expects. As the court in *California Council of the Blind* explained:

> On any given election day in the United States, most voters at the polls cast their ballots in private, without threat of interference by poll workers, the government, or curious onlookers. The provision and maintenance of voting systems that allow for such privacy is a normal function of a government entity.

*Id*. at 1238 (internal quotation marks omitted).

In *Disabled in Action*, the Second Circuit reasoned that requiring individuals with disabilities to obtain assistance to vote is antithetical to the purpose of federal disability rights laws that are intended to "empower individuals with disabilities to maximize employment, economic self-sufficiency, *independence*, and inclusion and integration into society." 752 F.3d at 200 (quoting Rehabilitation Act) (emphasis added by Second Circuit). In light of Congress' finding in the ADA that "individuals with disabilities . . . have been . . . relegated to a position of political powerlessness in our society," it is particularly critical that individuals with disabilities have an equal opportunity to vote and amplify their political voice. 42 U.S.C. § 12101(a)(7); *see Lamone*, 813 F.3d at 507.

The solution for ending Ohio's discriminatory treatment of Ms. Hindel, Ms. Pierce, Ms. Denning, and NFB members is straightforward: Mr. Husted must make available accessible absentee voting technology that would allow Plaintiffs to vote absentee privately and independently. All three proposed systems would allow Plaintiffs to review and mark their

absentee ballots independently using their screen access software and either a computer, tablet, or smart phone. Using any of these systems, Plaintiffs could review a summary screen to ensure the accuracy of their marked ballots prior to printing. Plaintiffs could then independently print their ballots, place them in the identification envelopes mailed to them by their local boards of elections, and seal the envelopes. If any of the Plaintiffs needed assistance signing their envelopes, they could obtain this assistance without sacrificing the privacy of their marked ballot. Plaintiffs would then place the stuffed identification envelope into the carrier envelope, also provided by the local board of election, and return the marked ballot by mail for counting.

Plaintiffs' proposed remedies constitute appropriate and necessary auxiliary aids or services that Secretary Husted must implement. Title II regulations define "auxiliary aids and services" to include, among other non-exhaustive examples, "accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision," as well as "other similar services and actions." 28 C.F.R. § 35.104. Because accessible technology assists blind voters in communicating their selections to the government by enabling them to independently mark their ballots, accessible absentee voting systems qualify as auxiliary aids or services.

Implementing the proposed absentee voting systems would also constitute a reasonable modification to the absentee voting program, pursuant to 28 C.F.R. § 35.130(b)(7). Establishing the reasonableness of a modification "need not be onerous." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir. 1998). "For the purposes of a *prima facie* showing, the plaintiff must merely suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id*. (internal quotation marks omitted). Plaintiffs will prove at trial that any of the proposed absentee ballot marking systems could be

17

implemented without great difficulty or cost.

Secretary Husted may only refuse to make an accessible absentee voting system available to Plaintiffs if he can prove that doing so would either fundamentally alter the nature of the absentee voting program or, in the case of providing an auxiliary aid or service, that it would pose an undue financial or administrative burden.  28 C.F.R. § 35.130(b)(7); 28 C.F.R. § 35.164. The Secretary cannot establish that making absentee voting accessible would fundamentally alter the nature of the absentee voting program because all votes would still be cast in absentia and counted in the election results.  Indeed, the tabulation of electronically-marked ballots would be no different from the manual tabulation of UOCAVA ballots delivered by e-mail or fax.

Furthermore, because both Prime III and the Maryland online ballot marking tool have been used successfully in previous statewide elections in other states, have been found to be secure, and are available at no cost, Secretary Husted will not be able to establish that implementing one of these accessible absentee voting systems would pose an undue financial or administrative burden.  The testimony at trial will establish that the Maryland tool would require little or no adaptation in at least 40 of Ohio's 88 counties that use the same election system vendor previously used in Maryland.  Furthermore, Mr. Schmitt's testimony will demonstrate that the costs of converting ballot-generating data to work with the AFB would not be onerous for the Secretary's office.

Although Secretary Husted may claim that it would be too administratively difficult to implement accessible absentee voting systems throughout the state, he cannot support this claim. The testimony will reveal that Secretary Husted lacks any knowledge of the different formats in which each county's ballot-generating data can be exported, nor does he possess any knowledge (or have an expert witness who possesses such knowledge) of what it would take to convert this

data into different formats.  Indeed, the testimony will demonstrate that Secretary Husted's affirmative defenses are based on nothing more than speculation and fear of change, not the factual showing required to demonstrate fundamental alteration or undue burden.

Finally, Secretary Husted may assert that state law certification requirements must stand in the way of Plaintiffs' federally-guaranteed civil rights under the ADA.  Plaintiffs have already addressed this incorrect contention in their Opposition to Secretary Husted's Motion for Judgment on the Pleadings, and will therefore incorporate these arguments by reference rather than repeat them here.  *See* Pls.'s Opp'n at 16-19.

To the extent the Secretary argues that no conflict between state and federal law exists here because Plaintiffs have not sought to have their proposed accessible absentee ballot marking tools certified under Ohio law, Plaintiffs will establish that the proposed ballot marking tools are ineligible to receive the EAC certification required under Ohio law.  Indeed, the Secretary has already admitted as much.  *See* Mem. in Supp. of Secretary Husted's Mot. for J. on Pleadings at 8-9 (acknowledging that accessible online absentee ballot marking tools, such as Maryland's online ballot marking tool, cannot meet the certification criteria under Ohio law because they are "independent marking tool[s] not part of any particular voting system").  Because there is no question that the proposed ballot marking tools could not obtain the necessary EAC certification to comply with Ohio law, Plaintiffs need not engage in the futile gesture of applying for state certification before seeking to vindicate their civil rights in court.  *See, e.g.*, 42 U.S.C. § 12188(a)(1) (noting in the context of Title III of the ADA, that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions").

To the extent Secretary Husted intends to argue that he lacks the power to require all Ohio counties to adopt an accessible method of absentee voting, this Court should reject this faulty argument.  The testimony at trial will demonstrate that the Secretary's office has the authority to direct the nature of elections, including absentee voting, throughout the state.  This authority includes the ability to issue directives governing the administration of elections at the local level and to remove and replace members of local boards of elections who refuse to comply with these directives.  Although county boards of elections can choose their preferred election technology, their choices are constrained by the options selected by the Secretary.  Should the Court grant Plaintiffs' request for relief in this case, the Secretary would have the power to direct the county boards of elections to adopt whichever accessible ballot marking tool they prefer and work with the counties, as his office already does, to provide training and support.

**B.** **Voter services website**

Secretary Husted's voter services website is another program, service, or activity of the state to which Plaintiffs must have access.  *See Martin v. Metro. Atlanta Rapid Transit Auth.*, 225 F. Supp. 2d 1362, 1377 (N.D. Ga. 2002) (holding that public transit agency violated Title II of the ADA by maintaining an inaccessible website); Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460, 43464 (proposed July 26, 2010)[8] ("There is no doubt that Web sites of state and local government entities are covered by title II of the ADA").

Yet the website's valuable information and critical services are not fully and readily available to blind Ohio voters and prospective voters.  For Plaintiffs and other blind voters who

---

[8] *Available at* http://www.gpo.gov/fdsys/pkg/FR-2010-07-26/pdf/2010-18334.pdf.

use screen access software to navigate, review, and interact with websites, the Secretary of State's voter services website is nearly impossible to navigate, contains many sections that are totally unreadable, and does not allow Plaintiffs to complete forms.  Because Secretary Husted makes these resources instantaneously available to voters without disabilities, at whatever time they choose to access them, he must provide voters with disabilities an equal opportunity to access the voter resources they need, whenever they may need them – even though some may be available through other means.  *See Martin*, 225 F. Supp. 2d at 1377 (holding that the public transit agency's website must be accessible, even though information could be requested in Braille and was also available by telephone).  Only by making the voter services website accessible can the Secretary ensure that his "communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others."  28 C.F.R § 35.160(a)(1).

Making the voter services website accessible would not constitute a fundamental alteration to the website because it would remain a fully operational website, simply one that more people could access.  Ms. Rush will further testify that remedying the website is not very difficult or costly, and therefore would not impose an undue financial or administrative burden.

## II.    Plaintiffs have suffered and will continue to suffer an irreparable injury if Secretary Husted continues to violate their federal civil right to equal opportunity.

The Court may presume irreparable harm when a defendant violates a civil rights statute such as the ADA.  *See Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012) (noting support for the proposition that "when Congress has enacted a statute such as the ADA to prohibit discrimination against individuals with disabilities, the occurrence of the very discrimination Congress sought to prevent is the type of irreparable injury that may support the

issuance of an injunction").[9]  The Court may also presume irreparable harm where, as here, the statute explicitly provides for injunctive relief.  *See* 42 U.S.C. § 12188(a)(2) ("Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter."); *CSX Transp., Inc. v. Tennessee State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992).

At trial, Ms. Hindel, Ms. Pierce, and Ms. Denning will explain how they have been harmed by not having the same option of voting absentee privately and independently that Ohio affords to all other voters.  Ms. Hindel and Ms. Denning will testify about their difficulties arranging for transportation to their polling locations and how they do not wish to share their voting selections with others, even spouses and bipartisan state employees.  Ms. Pierce will testify about how important the ability to vote privately and independently is to her and how she wants to retain this option should she need to vote absentee.  If the Court does not grant a permanent injunction requiring Secretary Husted to adopt an accessible absentee voting system in advance of the November 2016 general election, Plaintiffs will have no choice but to forfeit the benefits of voting absentee or sacrifice the privacy of their ballots.  "Plaintiffs are being deprived of their right to vote by absentee ballot privately and independently, and the end of that deprivation is nowhere in sight."  *Nat'l Fed. of the Blind v. Lamone*, No. RDB-14-1631, 2014 WL 4388342, at *15 (D. Md. Sept. 4, 2014), *affirmed by* 813 F.3d 494 (4th Cir. 2016).

---

[9] *See also Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("[W]here a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation"); *EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th Cir. 1984) (holding that the injuries facing the plaintiffs, such as loss of work, loss of future prospects for work, and infliction of emotional harm, were the type of injuries Congress sought to avoid through the ADEA and thus constituted irreparable harm).

Likewise, if the Court does not order the Secretary to make his voter services website accessible, Plaintiffs will be denied access to information about the election and the opportunity to update their voter registration in advance of the election through the voter services website. Ms. Pierce has been unable to use the voter services website independently to update her address. She finally had to rely on her husband to print and fill out a paper change of address form for her to have her address updated in advance of the March 2016 primary election. Such an unequal opportunity to maintain one's voter registration strongly infringes on blind Ohio voters' ability to engage in the voting process on equal footing, and therefore constitutes irreparable harm.

### III.  Remedies available at law, such as monetary damages, are inadequate to compensate for Plaintiffs' injury.

No amount of monetary relief can compensate for not being able to cast one's vote by absentee ballot privately and independently and from being denied the critical information and resources on the voter services website. As the district court in *Lamone* observed: "Remedies available at law are inadequate to compensate for violation of an individual's civil rights." *Lamone*, 2014 WL 4388342, at *15. In similar contexts, this Court has previously held that remedies available at law do not adequately compensate for a violation of an individual's constitutional right. *Am. Booksellers Found. for Free Expression v. Strickland*, 512 F. Supp. 2d 1082, 1106 (S.D. Ohio 2007) *rev'd and remanded on alternative grounds*, 601 F.3d 622 (6th Cir. 2010); *accord Brinkman v. Budish*, 692 F. Supp. 2d 855, 866 (S.D. Ohio 2010); *Sambo's of Ohio, Inc. v. City Council of City of Toledo*, 466 F. Supp. 177, 181 (N.D. Ohio 1979). Thus, the only relief that will remedy Plaintiffs' injury is relief that will prevent its reoccurrence: an injunction requiring Secretary Husted to adopt an accessible method of absentee voting and make his voter services website available to Plaintiffs on equal terms.

**IV.    The balance of hardships tips decidedly in favor of granting Plaintiffs' requested equitable relief.**

The balance of hardships tilts heavily in favor of granting Plaintiffs an injunction in this case.  At trial, Ms. Hindel, Ms. Pierce, and Ms. Denning will testify that unless Ohio is ordered to implement an accessible method of absentee voting, they will continue to be excluded from voting absentee unless they sacrifice the privacy of their ballots.  And unless the voter services website is corrected to work with screen access software in advance of the November election, Plaintiffs will be at a severe disadvantage when it comes to accessing information about key election dates, the candidates on the ballot, and their poll locations, as well as reviewing and filling out critical forms, such as the absentee ballot request and change of voter registration forms.  Accordingly, in the absence of an injunction, Plaintiffs will continue to suffer the effects of discrimination and exclusion from one of the most important institutions in a democracy.

In contrast, Mr. Husted's office will suffer little to no harm if the Court grants Plaintiffs an injunction.  Through the testimony of Dr. Gilbert and Mr. Schmitt, and the stipulation of fact regarding Maryland's tool, Plaintiffs will establish that accessible and secure absentee voting tools are readily available at little to no cost.  In addition, Dr. Gilbert will explain why the risk of incorrectly capturing voters' intent that exists with paper absentee ballots would be alleviated through use of an online ballot marking tool.

Although Secretary Husted may argue that implementing a tool that has not been certified or tested in Ohio could create risks for the election, Plaintiffs will establish that any such risks are purely speculative.  As the Sixth Circuit has observed, when the State violates plaintiffs' civil rights, the harm it alleges it will suffer from the issuance of an injunction must be "sufficiently weighty" to justify the continued deprivation of plaintiffs' rights.  *Obama for Am. v. Husted*, 697 F.3d 423, 434 (6th Cir. 2012).  Thus, when Secretary Husted previously claimed in a voting

rights case that an injunction "*could* make it much more difficult for the boards of elections to prepare for Election Day," the Sixth Circuit held that such speculative harm was not sufficiently weighty to stand in the way of an injunction vindicating plaintiffs' rights. *Id.* (emphasis in original).

Similarly, the testimony at trial will show that in this case as well, Secretary Husted lacks any concrete evidence of a single potential harm that would result from implementing any of the proposed absentee ballot marking tools in time for the November election. Specifically, Secretary Husted has not named any expert who could opine that any of Plaintiffs' proposed tools have security vulnerabilities. Nor will he be able to point to problems that have arisen in the states that have already implemented the proposed tools in real elections. As Plaintiffs will establish at trial, each of Plaintiffs' proposed accessible absentee voting tools has been used in previous elections in other states without issue – all votes marked using these systems were counted. Although Secretary Husted may offer Jack Cobb, an expert on voting system certification and testing requirements, to testify about the general import of certification and testing, Plaintiffs will establish that Mr. Cobb lacks familiarity with any of Plaintiffs' proposed marking tools and has no evidence that problems are likely to arise with their use in Ohio.

Similarly, Secretary Husted may claim that implementing the proposed tools across Ohio's 88 counties would not be workable. Yet Dr. Gilbert and Mr. Schmitt will testify that any of the proposed tools could be implemented without issue. Either someone in-house with knowledge of computer programming or an outside consultant could write whatever code is necessary to convert the ballot-generating data from each county into a format that can be used by the proposed absentee voting systems. Alternatively, counties could manually enter their ballot-generating data directly into any of the proposed absentee voting systems. No county

would have to change its existing election software system to implement accessible absentee voting.  Furthermore, because Maryland's online ballot marking tool is already designed to work with Premier's AccuVote election system, the nearly half of all Ohio counties that currently use this system could implement the Maryland tool as is, without the need to write new code.

Nor would tabulating the ballots marked with an online ballot marking tool cause Ohio any harm. Dr. Gilbert will testify that the county boards of elections could use any number of methods they already employ to count ballots marked with a ballot marking tool, including scanning returned ballots or manually copying ballots, as they do for UOCAVA voters.

Secretary Husted has not named an expert witness who will be able to contradict Dr. Gilbert's testimony that implementing an accessible method of absentee voting across all of Ohio can be done without great difficulty.  Furthermore, if the Court issues an injunction in this case by the end of May, that will leave Secretary Husted with four to five months to implement one or more of the proposed tools, perform any necessary testing, and develop whatever employee and voter training materials he wishes to produce.  As the Sixth Circuit noted in *Obama for America*, Secretary Husted's claim that requiring more work of already very busy election administrators and county board of elections employees in short proximity to a major presidential election is too much of a hardship for Ohio to bear is insufficiently weighty to shift the balance of hardships in his favor and block the enforcement of Plaintiffs' civil rights.  697 F.3d at 434.

As for the voter services website, Ms. Rush will testify that it is not particularly costly or difficult to remedy the voter services website so that it offers blind users equivalent access and ease of use.  In addition, the testimony at trial will establish that remedying the website in this manner is consistent with Secretary Husted's goal of enhancing voters' access to information.

Therefore, the balance of hardships tips strongly in favor of granting Plaintiffs' requested relief as to both accessible absentee voting and the voter services website.

**V.      A permanent injunction serves the public interest.**

Congress has made clear in enacting the ADA that the public interest lies in the eradication of discrimination against persons with disabilities, declaring that the ADA's purpose is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Tennessee v. Lane*, 541 U.S. 509, 516 (2004) (quoting 42 U.S.C. § 12101(b)(1)).  In the context of injunctions, the Sixth Circuit has firmly held that "[t]he public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA." *Jones*, 341 F.3d at 490, *abrogated on other grounds by Lewis*, 681 F.3d at 317; *accord Deck v. City of Toledo*, 29 F. Supp. 2d 431, 434 (N.D. Ohio 1998) (noting that "there is a significant public interest in eliminating discrimination against individuals with disabilities") (internal quotation marks omitted).

Furthermore, a permanent injunction in this case would ensure that more citizens have the opportunity to cast their votes, thus promoting the fundamental right to vote.  As the Sixth Circuit has observed:

> [T]he public has a strong interest in exercising the fundamental political right to vote. That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful. The public interest therefore favors permitting as many qualified voters to vote as possible.

*Obama for Am.*, 697 F.3d at 436-37 (internal quotation marks and citations omitted). Granting injunctive relief in this case promotes the right to vote, is consistent with the anti-discrimination mandate of the ADA, and thus serves the public interest.

**<u>CONCLUSION</u>**

Plaintiffs will prevail on the merits of their claim at trial and the balance of the four

factors for issuing a permanent injunction weigh heavily in Plaintiffs' favor.  For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Permanent Injunction and order Secretary Husted to offer Plaintiffs a method of voting absentee privately and independently by October 12, 2016, and a voter services website that offers Plaintiffs all of the same information and the same transactions, with substantially equivalent ease of use, by October 1, 2016, so that Plaintiffs can use both the accessible absentee voting system and the voter services website in advance of the November 8, 2016 general election.


Respectfully submitted,


_____/s/_____
Jason Boylan (0082409)
Trial Attorney
Kristen Henry (0082382)
DISABILITY RIGHTS OHIO
Ohio Disability Rights Law and Policy Center, Inc.
50 W. Broad St., Suite 1400
Columbus, Ohio  43215
Tel:  (614) 466-7264
Fax:  (614) 644-1888
jboylan@disabilityrightsohio.org
khenry@disabilityrightsohio.org

Daniel F. Goldstein (admitted *pro hac vice*)
Jessica P. Weber (admitted *pro hac vice*)
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland  21202
Tel:  (410) 962-1030
Fax:  (410) 385-0869
dfg@browngold.com
jweber@browngold.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 8th day of April, 2016, a copy of the foregoing Motion for Permanent Injunction was served on all counsel of record via the Court's electronic filing system.

_____/s/_____
Jessica P. Weber
