UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHELBI HINDEL, *et al.*,

      Plaintiffs,

-v-                                             Case No.: 2:15-cv-3061
                                                      JUDGE SMITH
                                                      Magistrate Judge Deavers

JON A. HUSTED,
OHIO SECRETARY OF STATE,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings on Count One of Plaintiffs' Complaint regarding the Secretary of State's ability to implement an available and accessible absentee voting system for blind voters. (Doc. 20). This matter is fully briefed and ripe for review. For the reasons that follow, Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

### I.    BACKGROUND

Plaintiffs are comprised of three individuals who are blind, as well as the National Federation of the Blind, Inc. The individual Plaintiffs Shelbi Hindel, Barbara Pierce, and Marianne Denning (hereinafter "Individual Plaintiffs") are all residents of Ohio who desire to vote absentee with the assistance of software that would allow them to mark their absentee ballots electronically. Ms. Hindel is able to read text on websites with the use of Job Access With Speech ("JAWS"), a type of screen access software that converts the text on a screen into an audio output or a Braille display pad. Ms. Pierce uses the program VoiceOver, another type

of screen access software that is available on Apple devices. Ms. Denning, like Ms. Hindel, also uses the JAWS software to access text on her computer. The National Federation of the Blind is a blind advocacy organization that promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society. (Doc. 1, Compl. ¶¶ 7–10).

Plaintiffs filed their Complaint and Motion for Preliminary Injunction on December 7, 2015, alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*. (hereinafter "ADA"). Plaintiffs are seeking to enjoin Defendant, the Ohio Secretary of State, John Husted (hereinafter, "Secretary Husted"), from violating the ADA and requiring him to offer a private and independent method of absentee voting and a voter services website that offers blind voters all the same information and transactions as all other voters. Plaintiffs assert that they desire to vote absentee privately and independently like all other Ohio voters.

A.  **Absentee Voting in Ohio**

In Ohio, any registered voter can choose to vote via an absentee ballot. There is no requirement for absentee voters to provide a reason for deciding to vote absentee. Absentee ballots are available beginning the day after the close of voter registration before each election. Ohio Rev. Code §§ 3509.01(B); 3509.02(B). An absentee ballot can be requested by completing a form that is available on the Secretary of State's website and mailing or delivering the completed form to the appropriate county board of elections. Although the form is available as a fillable PDF, the Secretary of State's website is not compatible with Plaintiffs' screen access software. Therefore, Plaintiffs have to rely on a third party to complete the absentee ballot request form on their behalf. (Doc. 1, Compl. ¶ 14).

Once the absentee ballot request is processed by the board of elections, a paper absentee ballot is mailed to the voter and it must be completed and mailed back to the board of elections.

2

*See* Ohio Rev. Code §§ 3509.01(A); 3509.04(B); 3509.05. Plaintiffs assert that the paper absentee ballots are not accessible to them as they cannot read the text on the absentee ballot. Thus, to vote absentee, the Individual Plaintiffs and other blind voters[1] must rely on the assistance of another person to read and mark their paper absentee ballots for them. Plaintiffs allege that this deprives them of their right to cast a secret ballot. (Doc. 1, Compl. ¶ 16). General absentee ballots are not sent or returned electronically with the limited exception that voters protected under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. § 20302(A)(6), may request and receive their ballots electronically. *See* Ohio Rev. Code §§ 3509.10; 3511.021. Ohio law provides that a voter may have someone assist him/her in the voting process or may request two election officials, one associated with each of Ohio's major political parties, provide assistance by delivering an absentee ballot to the voter's home and assist with the completion.[2] *See* Ohio Rev. Code §§ 3509.08; 3599.32. These election officials are required by law to keep confidential any selections made when assisting a voter. *See* Ohio Rev. Code §§ 3501.31; 3599.19; 3599.32.

**B.    Ballot Marking Programs for Absentee Voting**

Plaintiffs assert that there are auxiliary aids and services available that would allow them and other blind voters to privately and independently mark their absentee ballots on their computers. Specifically, the state of Maryland implemented an online ballot marking tool that

---

[1] The parties also reference individuals with dexterity impairments, such as someone with cerebral palsy, who this litigation would impact. There was a plaintiff with cerebral palsy would could not control his arms or hands in *Nat'l Fedn. of the Blind, Inc. v. Lamone*, No. 14-1631, 2014 U.S. Dist. LEXIS 123020 (D. Md. 2014).

[2] In addition to the aid in voting absentee, Ohio's voting locations are accessible for people with disabilities. Further, Ohio provides early, in person voting beginning 28 days before the election, including the Saturday and Sunday immediately prior to the election. Like polling places on Election Day, these early voting locations are similarly equipped with programmable voting machines to allow for non-visual access. *See* Ohio Rev. Code §§ 3506.19; 3501.11(Z).

3

allows voters who are blind to mark their absentee ballots independently. There is also the Prime III voting system that has been used in Oregon, Wisconsin, and New Hampshire for both in-person and absentee voting. (Doc. 1, Compl. ¶¶ 18–21, 23, 24). However, both systems still require the voters to print, sign, and return the ballot to the board of elections, which requires assistance from a third party. Additionally, Alaska has an electronic absentee ballot that can be completed and transmitted using the voter's computer. Blind voters could then use their own screen access software to complete absentee voting using this method. (*Id.* at ¶ 27). Plaintiffs represent that this technology is available to Ohio and would be of little to no cost to the state to implement.[3] (*Id.* at ¶¶ 22, 25, 27).

C.  **Ohio Secretary of State's Website**

The Secretary of State maintains a website, www.sos.state.oh.us/SOS/elections.aspx, that offers Ohio voters extensive information about voting procedures, policies, candidates, election data and results, campaign finance information, and upcoming elections. This is also the website where people can access the information and forms for voter registration and absentee ballot requests. Further, voters who wish to change their voter registration information, such as a change in address, can do so online via this website. Plaintiffs, however, cannot access this information as it is not compatible with their screen access software.[4]

---

[3] However, at this time there is no evidence before the Court regarding whether the proposed ballot marking software could be implemented in Ohio or whether it is compatible with Ohio's current voting system.
[4] The parties represented early in the litigation that they were willing to work on an agreement to resolve this claim and negotiations are still ongoing. Secretary Husted further represents in the Permanent Injunction briefing that his office has already taken steps to ensure that the website conforms to Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria. (Doc. 29, Def.'s Response in Opp. and Ex. C, Affidavit of Matthew Damschroder).

4

**D.     Ohio's Voting Process**

In Ohio, each of the eighty-eight counties has a board of elections that is responsible for administering Ohio's elections.  Each board of elections is responsible for generating and delivering ballots, as well as receiving and tabulating those ballots. Ohio Rev. Code §§ 3501.06; 3501.11.  Further, each board of elections is responsible for the selection and maintenance of its voting equipment, including all financial responsibility.  *See* Ohio Rev. Code §§ 3506.02; 3506.03.  However, "[n]o voting machine, marking device, automatic tabulating equipment, or software for the purpose of casting or tabulating votes or for communications among systems involved in the tabulation, storage, or casting of votes . . . shall be purchased, leased, put in use . . . unless it . . . ha[s] been certified by the secretary of state . . . ."  Ohio Rev. Code § 3506.05(B).  There is an extensive process for the certification of equipment set forth in detail in Ohio Revised Code sections 3506.05(C) and (D).  Further, Ohio requires:

> Before any voting machine is purchased, rented, or otherwise acquired, or used, the person or corporation owning or manufacturing that machine or having the legal right to control the use of that machine shall give an adequate guarantee in writing and post a bond in an amount sufficient to cover the cost of any recount or new election resulting from or directly related to the use or malfunction of the equipment, accompanied by satisfactory surety, all as determined by the secretary of state, with the board of county commissioners, guaranteeing and securing that those machines have been and continue to be certified by the secretary of state in accordance with section 3506.05 of the Revised Code, comply fully with the requirements of this section, and will correctly, accurately, and continuously register and record every vote cast, and further guaranteeing those machines against defects in workership and materials for a period of five years from the date of their acquisition.

Ohio Rev. Code § 3506.10.  Ohio counties currently utilize at least eight separate voting systems that have been certified pursuant to the aforementioned process.

5

## II.        STANDARD OF REVIEW

Defendant brings this motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6).  *Id*.; *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007)

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  A pleading will satisfy this plausibility standard if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.  Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint;" a recitation of facts intimating the "mere possibility of misconduct" will not suffice.  *Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In sum, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

### III. DISCUSSION

Plaintiffs initiated this case alleging that Defendant, Secretary Husted, has failed and continues to fail to provide blind voters "with an opportunity to vote that is equal to the opportunity provided to other voters," and has failed and continues to fail to provide blind voters "with an equal opportunity to access the critical information and forms available to all other voters on his voter services website." (Doc. 1, Compl. ¶¶ 41–42). Plaintiffs are seeking injunctive relief to be able to vote by absentee ballot in the 2016 Presidential Election using a ballot marking tool. The parties are currently briefing their preliminary/permanent injunction arguments, but Defendant has moved for judgment on the pleadings, which will be considered first.

Plaintiffs claim two violations of Title II of the Americans with Disabilities Act by Ohio's Secretary of State: (1) that Secretary Husted has failed to implement an accessible absentee voting system; and (2) that Secretary Husted has failed to provide all voters with equal access to the voter services website.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to establish a claim under the ADA, Plaintiffs must show

7

that they (1) have a disability; (2) that they are otherwise qualified; and (3) that they are being excluded solely because they have a disability. *See generally Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). There is no dispute that Plaintiffs have a recognized disability and are qualified to vote in Ohio. However, the parties dispute whether Plaintiffs have been excluded from participation in or denied the benefits of a service, program, or activity because of their disability. In assessing the third element of Plaintiffs' ADA claim, the Sixth Circuit has not set forth any clear guidelines or rules for a plaintiff making an accessibility challenge. However, other circuits have held that there are several ways in which Plaintiffs can establish that Secretary Husted has discriminated against them based on their disability: "(1) intentional discrimination or disparate treatment; (2) evidence of disparate impact; or (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 362 (4th Cir. 2008); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) ("Both disparate-treatment and disparate-impact claims are cognizable under the ADA."); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015) ("'Discrimination' includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'") (quoting 42 U.S.C. § 12112(b)(5)(A)).

The ADA grants the Attorney General authority to promulgate regulations to implement its provisions. 42 U.S.C. § 12134, *et seq*. The ADA requires reasonable modifications to accommodate qualified individuals with disabilities unless the public entity can demonstrate that such modification would entail an undue burden or fundamental alteration:

(b)

* * *

(7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the

8

>basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.
>
>(8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

* * *

28 C.F.R. §§ 35.130(b)(7)–(8).

Plaintiffs allege Secretary Husted failed to make reasonable accommodations to provide Plaintiffs access to the absentee voting program. In *Southeastern Community College v. Davis,* 442 U.S. 397 (1979), the Supreme Court "struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs: while a grantee need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones." *Alexander v. Choate*, 469 U.S. 287, 300 (1985) (citing *Davis*, 442 U.S. at 412–13). "*Davis* requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.* at 301. Therefore, in order to determine whether a violation of the ADA has been properly alleged, the Court must answer three questions: 1) what is the scope of the service provided by Secretary Husted? 2) do Plaintiffs have meaningful access to the service provided by Secretary Husted?

and 3) is the proposed accommodation facially reasonable or would it result a fundamental alteration of Ohio voting? Therefore, the Court will address each in turn

**A.      Scope of the Service**

As set forth above, the ADA requires that when public entities—such as the State of Ohio here—provide aids, benefits, or services, they may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor can they provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" as the benefit or service provided to others. 28 C.F.R. §§ 35130(b)(1)(ii)-(iii).

As a preliminary matter, the Court must first consider the scope of the service provided. Defendant argues that the Court should consider Plaintiffs' access to Ohio's voting system as a whole, as opposed to just the absentee ballot voting. Defendant references 28 C.F.R. § 35.150(a) in support of this contention which states: "A public entity shall operate each service, program or activity so that the service, program, or activity, when viewed *in its entirety*, is readily accessible to and usable by individuals with disabilities." (emphasis added). Plaintiffs, however, counter that the Fourth Circuit's recent decision in *Nat'l Fedn. of the Blind, Inc. v. Lamone*, 813 F.3d 494 (4th Cir. 2016), rejected the same argument set forth by Defendant in this case, and held that "it is far more natural to view absentee voting–rather than the entire voting program–as the appropriate object of scrutiny for compliance with the ADA." *Id*. at 504. This distinction is vitally important because if the Court were to consider Ohio's voting system in its entirety, the Court would have to take into account the accessible equipment and machines available at polling locations on Election Day and the twenty-eight preceding days at early voting centers.

Consideration of these accommodations would most assuredly result in a finding that Plaintiffs have meaningful access to private and independent voting programs.

The Sixth Circuit has not addressed this specific issue to date, but there is non-binding precedent from other circuits to which the Court may look for guidance. Some district courts analyzing ADA claims brought by disabled voters have held that the program comprises the entire voting system; absentee voting being a single component thereof. *See Kerrigan v. Philadelphia Bd. of Election*, No. 07-687, 2008 U.S. Dist. LEXIS 62263, at *40 (E.D. Pa. 2008) ("We find that Philadelphia's program of voting comprises its entire voting program, encompassing . . . its alternative and absentee ballot programs."); *see also Westchester Disabled on the Move v. Cnty. of Westchester*, 346 F. Supp. 2d 473, 477-78 (S.D.N.Y. 2004) (in evaluating claims of inaccessible polling places, analyzed the plaintiff's ADA claim in light of all voting options for disabled voters—including alternative voting locations and absentee ballots).

However, the Court finds the reasoning of the Fourth Circuit persuasive. The Fourth Circuit noted that when assessing the scope of a government service, courts "should proceed cautiously to avoid defining a public program so generally that we overlook real difficulties in accessing government services." Notably, "[a]bsentee ballots are not provided only to a limited set of voters with a demonstrated need to vote absentee; they are instead provided to the entire Maryland electorate at the option of each individual voter." *Lamone*, 813 F.3d at 504. Similarly, all Ohio voters have the option to vote by mail-in absentee ballot if they choose, regardless of necessity. The Court, therefore, agrees with Plaintiffs that expanding the scope of review beyond mail-in absentee voting is improper in this case.

B.     **Meaningful Access**

Secretary Husted argues that Plaintiffs have meaningful access to the absentee voting system in Ohio because assistance is available. Defendant argues that Ohio law requires that those who help a disabled voter are statutorily required to keep the voter's selections secret, guaranteeing confidentiality. Secretary Husted argues that there is no right to vote privately when voting absentee and thus, that Plaintiffs have meaningful access to the same absentee voting system all other voters have.

In *Lamone*, the Fourth Circuit rejected the argument that meaningful access exists because the there is no right to vote privately. The Court noted that the "case does not turn on whether there is a standalone right to vote privately and independently without assistance." *Lamone*, 813 F.3d at 506. The Fourth Circuit held that it is necessary to ensure that "disabled individuals are afforded an opportunity to participate in voting that is equal to that afforded others . . . ." *Id.* at 507. Thus, finding a legal right to a private vote is not a necessary prerequisite to finding that Plaintiffs have been denied meaningful access. Rather, Plaintiffs need only show that non-disabled voters were provided a benefit which is not being provided to disabled voters. In this case, Ohio has afforded all voters the right to vote by mail-in absentee. For non-disabled voters, Ohio has provided an absentee ballot which may be filled out without assistance or the loss of privacy in the marking of the ballot. That same right has not been afforded to disabled voters in Ohio.

The Court agrees with Secretary Husted that the assistance of two elections officials is not meaningless and that the statutory requirements of secrecy are important. However, to non-disabled voters, Ohio has provided the ability to vote mail-in absentee privately, independently, and secretly. There is no dispute that disabled voters require assistance under the current system

12

to vote by mail-in absentee. The inability of disabled voters to vote absentee in a private and independent manner evidences that these voters do not have the same meaningful access to mail-in absentee voting that non-disabled voters enjoy.

**C.     Reasonable Accommodation/Fundamental Alteration**

Upon finding that Plaintiffs have been denied meaningful access to Ohio's absentee voting system, Plaintiffs must also propose a reasonable modification, accommodation, or auxiliary aid to establish a violation of the ADA. Plaintiffs have proposed ballot marking software as an appropriate auxiliary aid and service. The ADA regulations define "auxiliary aid and services" as "accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision," as well as "other similar services and actions." 28 C.F.R. § 35.104. There is no question that the proposed ballot marking software would afford Plaintiffs and other blind voters with a near-equal opportunity to vote via an absentee ballot in Ohio. Defendant asserts, and the Court agrees, that the proposed online voting tools still do not provide Plaintiffs with the complete voting independence that they desire. (Doc. 23, Def.'s Reply at 7). Just as under Ohio's current voting system, Plaintiffs would have to rely on third-party assistance to complete and return the ballot. Even though they would be able to privately mark their voting selections with the software, they would still need assistance in signing the completed ballot and returning it. Defendant therefore argues that while the current absentee voting option for Plaintiffs may not be perfect, it has been fully tested in accordance with the laws of the State of Ohio and Plaintiffs' proposed alternatives have not. Defendant further argues that it is not reasonable or practical to implement the statewide use of the proposed ballot marking software for the first time during a major election.

13

If the systems are an accommodation, the accommodation must be reasonable. *Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) abrogated on other grounds by *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015); *Johnson v. City of Saline*, 151 F.3d 564, 571 (6th Cir. 1998). If the system is an auxiliary aid, then the aid need not be reasonable. 28 C.F.R. § 35.160(b)(1). However, regardless of whether the system is an auxiliary aid or an accommodation, the system may not impose a fundamental alteration to the nature of the program. *See* 28 C.F.R. §§ 35.130, 35.164. The public entity bears the burden of proving that the accommodation would fundamentally alter the program. *Popovich v. Court of Common Pleas Domestic Relations Div.*, 227 F.3d 627, 639 (6th Cir. 2000), *rev'd on other grounds*, 276 F.3d 808 (6th Cir. 2002) (en banc).

Defendant argues that the proffered accommodation—mandatory implementation of either the Maryland OBMT or the Prime III voting systems—is not reasonable on its face because to do so would require the Secretary of State to disregard an "important and established Ohio certification law." (Doc. 20, Def.'s Mot. at 16). Plaintiffs rely heavily on the *Lamone* case, which ultimately held that the proposed accommodation—the ballot marking software—was reasonable and did not fundamentally alter Maryland's voting system. However, major factual differences exist between this case and *Lamone*. Notably, the ballot-marking software in *Lamone* was used by voters in the 2012 Maryland elections. There was no evidence of any problems or security breaches in using the software in Maryland in 2012. But, in 2013, the Maryland general assembly passed a statute, similar to Ohio's certification laws, that required the tool be certified by the Maryland Board of Elections before it could be used in future elections. After the new law passed, the Maryland Board of Elections continued to work on the tool and continued to make it more accessible to disabled voters. An independent consultant

certified the tool as being safe. In April 2014, the tool had not been certified at the time of the *Lamone* lawsuit. After *Lamone* was filed, the Maryland Board of Elections held a vote on the certification of the tool and voted in favor of certification. However, because one board member was absent and statutory voting requirements were not met, the tool was not approved. The district court in *Lamone* focused on the fact that the software was already used prior to the certification law and therefore, found that the after-the-fact certification would not change anything. The court further noted that, "[w]hile perhaps the analysis would be different if Plaintiffs sought to gain access to an uncertified tool that had never been used in a real-world situation, those are not the precise facts of this case." *Lamone*, 2014 U.S. Dist. LEXIS at *44–45. However, as Defendant argues, those are the facts of the case at bar. Plaintiffs are requesting that the Court order the State of Ohio to implement software that has never been used in Ohio. It has not been certified in accordance with Ohio law and it may or may not be compatible with all of the different voting systems currently being used in Ohio's eighty-eight counties.

In *Lamone*, the Fourth Circuit noted that the mere existence of a state law is not a barrier to a reasonable accommodation. *Lamone*, 813 F.3d at 508. However, the court also noted that "[c]ertain requirements of state law could in fact be fundamental to a public program in a way that might resist reasonable modifications otherwise necessary to bring that program into compliance with the ADA." *Id.* at 509. The *Lamone* court held that "[t]he relevant inquiry here is not whether certification qua certification is fundamental to Maryland's voting program, but whether use of the tool without certification would be so at odds with the purpose of certification that such use would be unreasonable." *Id.* The Court notes that different factual circumstances were before the Fourth Circuit because the Maryland tool had already been provided to the

15

Board of Elections for certification and failed solely because it did not receive a supermajority of the Board vote. Additionally, it had previously been certified as safe twice and had already been used in prior elections. However, those are not facts alleged in this case.

The Sixth Circuit has set forth, "[i]n cases involving waiver of applicable rules and regulations, the overall focus should be on 'whether waiver of the rule in the particular case would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change.'" *Jones*, 341 F.3d at 480 (quoting *Dadian v. Village of Wilmette*, 269 F.3d 831, 838–39 (7th Cir. 2001)). Although the Court recognizes that the fundamental alteration analysis is normally a fact-intensive inquiry, Plaintiffs are asking this Court to judicially certify an election tool that has never been used in Ohio or even presented to the Ohio Board of Elections for review. Regardless of any factual findings the Court may make at a later hearing, there are no allegations before this Court like the factual findings in *Lamone*. Namely, neither of the suggested tools have been presented to the Board of Elections for certification, testing, or a vote, nor have the tools been used in an Ohio election before.

Allowing Plaintiffs to implement a new system would force the Court into the position of determining which systems will work most effectively with each of Ohio's various voting systems. This is in direct conflict with the statute's stated purposes and requirements. The statute requires that a board of voting machine examiners review each machine and that the examiners "shall be a competent and experienced election officer or a person who is knowledgeable about the operation of voting equipment." Ohio Rev. Code § 3506.05(B)(3). Additionally, the statute requires that voting machines meet "the voting system standards adopted by the federal election commission in 2002." Ohio Rev. Code § 3506.05(H)(4)(b). These requirements—federal compliance and that board members be experienced—underscore

16

the legislature's strong desire to avoid have a voting machine certified that would not properly serve Ohio's electorate. To disregard these legitimate concerns and overrule the system currently in place when neither Plaintiffs nor the makers of any of the proposed systems have even attempted to have the systems certified would be a fundamental alteration to Ohio's voting program. Certainly, this case would be different if any of these systems had been tested through the certification process in Ohio or if any of the systems had been used in an Ohio election. But, again, those are not the allegations in this case.

Accordingly, the Court declines to disregard Ohio's certification requirement by making a fundamental alteration to the Ohio election system. As such, Plaintiffs' proposed ballot marking software accommodations are unreasonable. The certification law has been in existence and it should not be disregarded, even for such an important reason—assisting blind voters in absentee voting.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings. Although the Court finds that Plaintiffs have been denied meaningful access to Ohio's absentee voting process, it would fundamentally alter Ohio's voting system as a whole to attempt to implement the proposed ballot marking software prior to the 2016 general election. In sum, having found that Plaintiffs have been denied meaningful access to the absentee voting system as it currently exists, the only thing standing in the way of an alternative voting system is certification. Plaintiffs have not offered any argument or evidence as to why they have not sought to have the proposed ballot marking software certified. Being Plaintiffs in *Lamone*, the National Federation for the Blind was well-aware of the ballot marking software as early as 2012 when it was used in the primary election. 2014 U.S. Dist. LEXIS at *2. However, Plaintiffs

waited until 2015 to initiate this case for injunctive relief, an end-run around Ohio's certification laws.  The Court encourages both Plaintiffs and the Secretary of State to continue to work on this issue and determine if such software could be implemented for future elections, or if some other alternative could be made available such as Braille ballots.

In light of this decision, the Scheduling Order setting a hearing/trial date for June 6, 2016, is hereby **VACATED**.

There still remains the issue of Plaintiffs access to Defendant's voter services website.  The parties have been engaged in settlement discussions related to this claim.  These discussions are ongoing.  The Court encourages the parties to continue to reach a resolution on this issue.  However, should the parties reach an impasse in negotiations, please contact the Court so that a decision can be rendered on the merits briefing on this claim.

The Clerk of this Court shall remove Document 20 from the Court's pending motions list.

**IT IS SO ORDERED.**

*s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**