UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHELBI HINDEL**, *et al.*,

      **Plaintiffs**,

-v-                                                      Case No.: 2:15-cv-3061
                                                                      JUDGE SMITH
                                                                        Magistrate Judge Deavers

**JON A. HUSTED,**
**OHIO SECRETARY OF STATE,**

      **Defendant.**

**OPINION AND ORDER**

This matter is before the Court upon Plaintiffs' Motion for Reconsideration (the "Motion") (Doc. 34) of this Court's Opinion and Order granting Defendant's Motion for Judgment on the Pleadings (Doc. 31) ("Opinion and Order"). The Motion is fully briefed and ripe for review. For the following reasons, Plaintiffs' Motion is **DENIED**.

**I.    BACKGROUND**

On May 11, 2016, the Court granted Defendant Ohio Secretary of State, John Husted's ("Secretary Husted") Motion for Judgment on the Pleadings regarding Secretary Husted's ability to immediately implement an available and accessible absentee voting system for blind voters. (Doc. 31, Opinion and Order). Plaintiffs now move under Federal Rule of Civil Procedure 54(b) and ask the Court to reconsider its May 11, 2016 Opinion and Order in light of the recent enactment of Senate Bill 63. On September 13, 2016, Senate Bill 63 took effect and removed statutory federal certification requirements which Plaintiffs argue served as the basis of the Court's Opinion and Order.

The Court has previously set forth the factual background in this case in detail in the Opinion and Order.  (*See* Doc. 31, Op. and Order at 1–5).  To briefly summarize, the individual Plaintiffs, Shelbi Hindel, Barbara Pierce, and Marianne Denning ( "Individual Plaintiffs"), are all residents of Ohio who desire to vote absentee with the assistance of software that would allow them to mark their absentee ballots electronically.  Plaintiffs alleged that the Individual Plaintiffs and others similarly situated are being denied the right to cast an absentee vote privately and independently.  Plaintiffs filed their Complaint and Motion for Preliminary Injunction on December 7, 2015 (Doc. 1).  Plaintiffs claimed Secretary Husted failed to implement an accessible absentee voting system and failed to provide all voters with equal access to the voter services website, both in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*.  Relevant here, one of Plaintiffs' requested forms of relief asked this Court to require Secretary Husted to offer a private and independent method of absentee voting.  Specifically, Plaintiffs proposed the immediate implementation of software that has been used in other states which they felt would serve as a feasible accommodation for Ohio's blind voters.  (Doc. 1, Compl. at ¶¶ 19–26; Doc. 22, Pls.' Resp. to Mot. for J. on Pleadings at 2–3).

## II. STANDARD OF REVIEW

Plaintiff moves pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  Rule 54(b) states in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  "District courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."  *Harrington v. Ohio Wesleyan Univ.*, No. 2:05-CV-249, 2008

2

WL 163614, at *1 (S.D. Ohio Jan. 16, 2008) (Holschuh, J.) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund,* 89 F. App'x 949, 959 (6th Cir. 2004) (unpublished)). "The Court has 'significant discretion' in considering a motion to reconsider an interlocutory order." *Harrington,* 2008 WL 163614, at *2 (quoting *Rodriguez,* 89 F. App'x at 959, n. 7). "Motions for reconsideration serve a limited function. Generally, a motion for reconsideration is only warranted when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest justice." *Doyle v. Pollitt*, No. 2:08-CV-761, 2010 WL 658652, at *1 (S.D. Ohio Feb. 22, 2010) (Marbley, J.) (citing *Rodriguez*, 89 F. App'x at 959).

Thus, motions for reconsideration are "not designed to give an unhappy litigant an opportunity to relitigate matters already decided." *Gascho v. Glob. Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 714 (S.D. Ohio 2013) (Smith, J.). "When a motion for reconsideration raises only a disagreement by a party with a decision of the court, that dispute 'should be dealt with in the normal appellate process, not on a motion for reargument.'" *Dukes v. ADS All. Data Sys., Inc.*, No. 2:03-CV-00784, 2007 WL 1057387, at *1 (S.D. Ohio Apr. 4, 2007) (Smith, J.) (quoting *Database Am., Inc. v. Bellsouth Advert. & Publ'g Corp.*, 825 F. Supp. 1216, 1219–20 (D.N.J. 1993)).

### III. DISCUSSION

Plaintiffs contend that the enactment of Senate Bill 63 "removes the statutory federal certification requirement for ballot marking tools, and thus removes the basis for the Court's rationale in concluding that Plaintiffs' requested relief constituted a fundamental alteration under Title II of the ADA." (Doc. 34, Mot. at 1). Defendant counters that Senate Bill 63 merely eliminated one component of Ohio's certification process. (Doc. 35, Resp. at 1).

3

A.     This Court's Prior Findings in its May 11, 2016 Opinion and Order

In order to establish a claim under the ADA, Plaintiffs must show that they (1) have a disability; (2) that they are otherwise qualified; and (3) that they are being excluded solely because they have a disability. *See generally Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998).  The parties did not dispute—and the Court agreed—that Plaintiffs satisfied the first two elements. (Doc. 31, Op. and Order at 8). As to the third element, this Court noted that the Sixth Circuit has not set forth a clear standard governing accessibility claims. However, this Court concluded that other circuits have found discrimination where the plaintiff can establish:

> "(1) intentional discrimination or disparate treatment; (2) evidence of disparate impact; or (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 362 (4th Cir. 2008); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) ("Both disparate-treatment and disparate-impact claims are cognizable under the ADA."); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015) ("'Discrimination' includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'") (quoting 42 U.S.C. § 12112(b)(5)(A)).

(*Id.*). Indeed, Plaintiffs claimed that Secretary Husted was discriminating against them by way of his failure to make reasonable accommodations to provide Plaintiffs private and independent access to the absentee voting system. Secretary Husted generally countered that Plaintiffs had meaningful access to the absentee voting system and furthermore, their requested forms of relief were facially unreasonable. (Doc. 23, Reply to Mot. for J. on the Pleadings at 5).

Ultimately, this Court determined that three questions needed to be answered to determine whether Plaintiffs alleged a violation of the ADA: "1) what is the scope of the service provided by Secretary Husted? 2) do Plaintiffs have meaningful access to the service provided by Secretary Husted? and 3) is the proposed accommodation facially reasonable or would it result a fundamental alteration of Ohio voting?"  (Doc. 31, Op. and Order at 9–10). This Court

determined that Plaintiffs were correct that the scope of the service being offered was absentee voting rather than the voting process as a whole. (*Id*. at 11). As to the second question, this Court determined that Plaintiffs "do not have the same meaningful access to mail-in absentee voting that non-disabled voters enjoy." (*Id*. at 13). However, this Court found that mandatory implementation of Plaintiffs' proffered accommodations would constitute a fundamental alteration to the Ohio election system. Accordingly, this Court granted Defendant's Motion for Judgment on the Pleadings.

**B.     Senate Bill 63**

On June 13, 2006, Governor John Kasich signed into law Senate Bill 63, which made changes to the process under which ballot marking tools are certified for use in Ohio's elections. Senate Bill 63 became effective on September 13, 2016. Prior to Senate Bill 63's enactment, Ohio Revised Code § 3506.05(H) required that ballot marking tools—such as the aids Plaintiffs sought to have implemented here—be certified by the federal Elections Assistance Commission ("EAC") prior to becoming eligible for review by Ohio's Board of Voting Machine Examiners ("BMVE"). However, the newly revised version of § 3506.05(H) removes this federal certification requirement for voting machines, marking devices, and automatic tabulating equipment that the EAC does not certify as part of its testing and certification program.[1] *See* O.R.C. § 3506(H)(4)(b). This is the only relevant change that Senate Bill 63 made to Ohio's election equipment certification process; otherwise, Ohio's certification processes and procedures remain unchanged.

---

[1] The ballot marking tools proposed by Plaintiffs are not certified by the EAC.

5

C.     **Senate Bill 63's Effect on the Opinion and Order**

Plaintiff argues that the intervening change in law brought about by Senate Bill 63's passage "justifies reconsideration of [the Opinion and Order]" because this Court premised the Opinion and Order on the theory that Plaintiffs' proposed accommodations were not certifiable at the federal level and thus, could never be implemented in Ohio without fundamentally altering Ohio's election process.  (Doc. 34, Mot. at 4).  Secretary Husted counters that Ohio's certification process is multi-faceted and cannot be bypassed simply because the federal certification component of the process has been eliminated. (Doc. 35, Resp. at 1).

It appears Plaintiffs have misconstrued this Court's Opinion and Order.  This Court did not—as Plaintiffs contend—base its opinion on the theory that the EAC does not certify ballot marking tools such as Plaintiffs' proposed accommodations, thereby rendering certification impossible.  Plaintiffs cite no such language from the Opinion and Order, as it does not exist. Instead, this Court took a much more general approach to the certification process that Plaintiffs were attempting to skirt.  The Opinion and Order merely mentioned in passing that voting machines are required to meet federal standards "to underscore the legislature's strong desire to avoid having a voting machine certified that would not serve Ohio's electorate." (Doc. 31, Op. and Order at 16–17).  This reference cannot be construed as the fundamental basis of this Court's Opinion and Order.  Quite the opposite, this Court identified the importance of the BMVE's role in certifying election equipment, particularly in light of the various voting systems employed by Ohio's eighty-eight counties.

The BMVE is an independent, statutorily created body that safeguards the integrity of Ohio's electoral process by ensuring that the technology employed by Ohio's eighty-eight counties is accurate and reliable.  That Maryland, Oregon, Wisconsin, New Hampshire, and/or other states were able to implement one of Plaintiffs' proposed accommodations in their

6

elections without incident is inconsequential here.  Ohio is a diverse state and its counties' resources vary greatly.  Ohio's counties currently use at least four different voting system vendors and each vendor offers multiple systems.  (Doc. 28-1, Damschroder Dep. at 57).  The result is that each county's board of elections is able to select a system that is affordable and effective for that county's voters.  Ohio's legislature has set forth a detailed process under which voting equipment must be examined before it can be implemented in local, state, or federal elections.  *See* O.R.C. §§ 3506.05(C) and (D).  Presumably, the BMVE's particularized review will shed more light on the compatibility of Plaintiffs' proposed accommodations and Ohio's various voting systems than the federal certification component ever could.  Senate Bill 63 does not eliminate the entire certification process; rather, it only eliminates one stage of the certification process.  As such, the enactment of Senate Bill 63 does not constitute an intervening change of controlling law to warrant this Court's reconsideration of its prior Opinion and Order.  With the federal certification component now eliminated for ballot marking tools, there is nothing stopping Plaintiffs from pursuing certification in accordance with Ohio Revised Code § 3506 *et seq*.

### IV.    CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Reconsideration is **DENIED**.

The Clerk shall remove Document 34 from the Court's pending motions list.

**IT IS SO ORDERED.**

  */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**