**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SHELBI HINDEL,** *et al.***,**

            **Plaintiffs,**

**-v-**                                      **Case No.: 2:15-cv-3061**
                                                  **JUDGE GEORGE C. SMITH**
                                                  **Magistrate Judge Deavers**

**JON A. HUSTED,**
**OHIO SECRETARY OF STATE,**

            **Defendant.**

## OPINION AND ORDER

This matter is before the Court upon Plaintiffs' Motion for a Permanent Injunction. (Doc. 47). This Motion pertains to the final issue pending before the Court in this case regarding access to the Ohio Secretary of State's website. The Motion is fully briefed and ripe for review. For the following reasons, Plaintiffs' Motion is **GRANTED IN PART**.

### I.    BACKGROUND

The individual Plaintiffs, Shelbi Hindel, Barbara Pierce, and Marianne Denning ("Individual Plaintiffs")[1], are all residents of Ohio who initiated this case seeking to vote absentee with the assistance of software that would allow them to mark their absentee ballots electronically and to use the software to access the Ohio Secretary of State's website.

On May 11, 2016, the Court granted Defendant Ohio Secretary of State, John Husted's ("Secretary Husted") Motion for Judgment on the Pleadings regarding Secretary Husted's ability

---

[1] The National Federation of the Blind, Inc. is also a Plaintiff in this case and is acting on behalf of its blind members who are registered to vote in Ohio and seeking to access the important information and forms available on the Secretary of State's voter services website. (Doc. 1, Compl. ¶ 10).

to immediately implement an available and accessible absentee voting system for blind voters. (Doc. 31, Op. and Order).  The remaining issue before the Court is the Individual Plaintiffs' access to the Ohio Secretary of State's voter services website (the "website"), available at www.sos.state.oh.us.[2]  The website offers Ohio voters information about voting procedures and policies, candidates, new voting initiatives, election results and data, campaign finance information, and upcoming elections.  There are also voting forms available on the website, including voter registration and absentee ballot request forms.  Voters who wish to change their voter registration can do so online via the website.  Additionally, as of January 2017, individuals may also use the website to register to vote.  *See* Ohio Rev. Code § 3503.20.

Plaintiffs and other blind individuals often use screen access software to access public websites like the Ohio Secretary of State's website.  This software converts the information on the website to a form the individuals can read, such as textual information on a computer, tablet, or smartphone screen via an audio output, refreshable Braille display pad, or by screen magnification.  (Doc. 47, Pls.' Mot. at 3).  There are accessibility guidelines (the Web Content Accessibility Guidelines ("WCAG")) published by the Web Accessibility Initiative of the World Wide Web Consortium.  These guidelines specify how to make content accessible for all users, but primarily for people with disabilities.  The current version of these guidelines that the parties agree the website should comply with is WCAG Level 2.0 AA.  At the time of the filing of these briefs, the parties agree that the website is not compliant with WCAG Level 2.0 AA.

In February 2015, the American Civil Liberties Union ("ACLU") and Center for Accessible Technology published a report explaining the need for accessible online voter

---

[2] The website contains thousands of individual webpages and hundreds of forms and documents addressing issues ranging from election and voter information to business filings.  (Doc. 29-3, Damschroder Aff. at ¶4).

registration for voters with disabilities and assessing the accessibility of several states' voter services websites. (Doc. 2-9, Decl. of Sharron Rush ¶ 10, Ex. B (citing Suzan Mizner & Eric Smith, *Access Denied: Barriers to Online Voter Registration for Citizens with Disabilities*, ACLU Ctr. for Accessible Tech., (January 2015), https://www.aclu.org/report/access-denied-barriers-online-voter-registration-citizens-disabilities).[3] The report included an assessment of Ohio's voter services website and found that Ohio's website failed in seven out of nine categories of accessibility: forms; screen reader access; semantic organization; skip navigation; alt text; keyboard access; and text size and scaling. (*Id.* at Ex. B, 46–47). Plaintiffs have also provided the Court with a video demonstration of individuals attempting to access various portions of the Secretary's website. (Doc. 47-2, Video Exh. 1-A to Pl.'s Mot.). The Court reviewed the video in its entirety illustrating the difficulty a blind individual would have in navigating the website.

Secretary Husted has begun the process to ensure the website meets the accessibility standards, but not as quickly as demanded by Plaintiffs. Prior to the initiation of this lawsuit and in response to the February 2015 ACLU and Center for Accessible Technology report, Secretary Husted contracted with a third-party vendor, Unicon (aka Lochbridge), to assess how to bring the

---

[3] Sharron Rush is the Executive Director of Knowbility, Inc., a nonprofit organization that is a leader in advocacy and training for web and digital technology accessibility. In addition the ACLU and Center for Accessible Technology's report discussed above, she conducted her own testing of Ohio's website to determine if it was accessible to blind individuals using screen access software. (Rush Decl. at ¶¶ 3, 4, 7, 8, 10). The Court has reviewed the summary provided by Ms. Rush, but does not find it is necessary to discuss in detail as the Secretary of State does not dispute the problems with his website.

Ms. Rush opined that it would cost between $25,000 to $50,000 to fix the Secretary's website, including all of its forms, and that creating a new website could be considerably less expensive. (Doc. 49-1, 12/7/15 Rush Decl. ¶ 11).

voting and elections portions of his website into compliance with the WCAG Level 2.0 AA.[4] Secretary Husted later contracted with third-party vendor SSB Bart to obtain an assessment of the complete website. (Doc. 48, Def.'s Resp. at 2).

Additionally, Secretary Husted contracted with Pete Bossley of Accessibility Ally, an independent website accessibility contractor, to review potential contract bids and to oversee the selection process, as well as to provide post-remediation testing to ensure satisfactory compliance with WCAG 2.0 AA. (Doc. 48-1, Damschroder Supp. Aff. at ¶ 14). The Secretary's office also hired Nathan Fernandes to serve as the Secretary's website accessibility coordinator. (*Id.* at ¶ 19). In this role, Mr. Fernandes reports directly to Assistant Secretary of State and Chief of Staff Matthew Damschroder and has been charged with developing, implementing, and managing an electronic and information technology accessibility program within the Secretary's office. (*Id.* at ¶ 20). Further, Secretary Husted worked with Plaintiffs prior to the 2016 general election to prioritize and expedite the updates to the most commonly used components of the voters and elections portions of the website. Secretary Husted acknowledges that there is still more work to be done and has ultimately determined that the most effective way to conform its complete website to WCAG 2.0 AA is to purchase a new web content management system ("CMS").[5] (Doc. 48-1, Damschroder Supp. Aff. at ¶ 7).

Secretary Husted has begun the process to contract with a third-party vendor to purchase a new website content management system. (*Id.* at ¶ 5). On December 7, 2016, the Secretary's

_____

[4] The Secretary of State's office does not have the staff or technology to independently perform a complete overhaul of its website and therefore must use third-party vendors to perform many of these tasks. (Doc. 29-3, Damschroder Aff. at ¶ 5). In order for the Secretary to contract with outside vendors, he must comply with the State of Ohio's procurement process. Ohio Rev. Code §§ 125.035, 125.041 (Doc. 29-3, Damschroder Aff. at 6;).

[5] CMS is a software system that provides the foundation and tools to create and manage website content.

office prepared and published a request for proposals ("RFP"). The RFP was scheduled to be published for four weeks, after which time the Secretary's office, with the guidance of consultants Mr. Bossley and Mr. Fernandes, planned to select a qualified vendor. (*Id*. at ¶¶ 6-8). It is the Secretary's position that once the information from the current website is transferred to the new CMS, and fully tested, then it will be in compliance with WCAG 2.0 AA. (*Id*. at ¶¶ 10, 20).

Plaintiffs acknowledge the efforts made by the Secretary of State, but argue that the Secretary's proposed completion date for remediation of November 2018 is unacceptable. Plaintiffs seek to enjoin Secretary Husted from denying individuals with disabilities an equal opportunity to access the website, in violation of Title II of the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. § 12101–12213. Plaintiffs seek a proposed deadline of March 2017.

## II.    STANDARD OF REVIEW

The standards for preliminary and permanent injunctions are essentially the same, except that the plaintiff must show actual success on the merits when seeking a permanent injunction. *Am. Civil Liberties Union of Kentucky v. McCreary Cty., Ky.*, 607 F.3d 439, 445 (6th Cir. 2010). To obtain a permanent injunction, Plaintiffs must establish:

> (1) that they will suffer a continuing irreparable injury if the court fails to issue an injunction; (2) that there is no adequate remedy at law; (3) that, considering the balance of hardships between the plaintiffs and the defendants, a remedy in equity is warranted; and (4) that it is in the public's interest to issue the injunction.

*Sherfel v. Gassman*, 899 F. Supp. 2d 676, 708 (S.D. Ohio 2012) (Graham, J.), *aff'd sub nom.*, *Sherfel v. Newson*, 768 F.3d 561 (6th Cir. 2014).

Additionally, when a party seeks to enjoin a government agency, "his case must contend with the well-established rule that the Government has traditionally been granted the widest

latitude in the dispatch of its own affairs." *Rizzo v. Goode*, 423 U.S. 362, 378–80 (1976) ("When it injected itself by injunctive decree into the internal disciplinary affairs of this state agency, the District Court departed from these precepts").  "This 'well-established' rule bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury." *Midgett v. Tri–County Metro. Dist. of Oregon*, 74 F. Supp. 2d 1008, 1012 (D.Or. 1999), *aff'd* 254 F.3d 846 (9th Cir. 2001); *see also Brown v. Bd. of Tr. of LaGrange Ind. Sch. Dist.*, 187 F.2d 20 (5th Cir. 1951).  Therefore, any injunction against a state agency must be ***narrowly tailored*** to "fit the nature and extent" of the established constitutional or statutory violation.  *See Gibson v. Firestone*, 741 F.2d 1268, 1273 (11th Cir. 1984) (emphasis added).  Greater caution or care should be exercised where a government subdivision is involved, particularly where the injunction would require "detailed and continuous supervision" over the conduct of that subdivision.  *Brown*, 187 F.2d at 24.

### III.    DISCUSSION

Plaintiffs are seeking a permanent injunction against Secretary Husted to require him to make his website accessible to everyone, including the Individual Plaintiffs who use special software to read the website's information.  Plaintiffs contend that Secretary Husted is in violation of Title II of the ADA by denying Plaintiffs an equal opportunity to access the website. (Doc. 47, Pl.'s Mot. at 11).  Defendant counters that even before this lawsuit was filed, he has been working to improve the website accessibility for all users and an order requiring completion as suggested by Plaintiffs would be unduly burdensome.  (Doc. 48, Resp. at 2).

### A.    Success on the Merits

Title II of the ADA requires that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. Defendant is a public entity within the scope of Title II. 42 U.S.C. § 12131(1)(B). In order to establish a claim under the ADA, Plaintiffs must show that they (1) have a disability; (2) that they are otherwise qualified; and (3) that they are being excluded solely because they have a disability. *See generally Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). The parties do not dispute, and the Court agrees, that Plaintiffs have satisfied the first two elements. The Individual Plaintiffs have a recognized disability and as citizens of Ohio and interested in voting, they are qualified to use the Secretary of State's website. As to the third element, whether Plaintiffs were subjected to unlawful discrimination because of their disabilities, it is not necessary that they show intentional discrimination. *Alexander v. Choate*, 469 U.S. 287, 296 (1985). The Supreme Court has recognized that discrimination against the disabled is typically due to "apathetic attitudes rather than affirmative animus." *Id.*

Plaintiffs generally argue that in providing a website service, Secretary Husted must afford all individuals, including Plaintiffs, "an opportunity to participate in or benefit from the aid, benefit, or service that is . . . equal to that afforded others." (Doc. 47, Pls.' Mot. at 12 (citing 28 C.F.R. § 35.130(b)(1)(ii))). Plaintiffs assert that they have been denied the right to use the Secretary's website in a manner that is "equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). As illustrated by the declaration of Plaintiffs' expert witness, Sharron Rush, and the video exhibit submitted by Plaintiffs, the website is difficult for the Individual Plaintiffs using screen access software to navigate the website and access some of the information.

Plaintiffs and Defendant both reference one case that addressed the issue of an inaccessible website: *Martin v. Metro. Atlanta Rapid Transit Auth.*, 225 F. Supp. 2d 1362 (N.D. Ga. 2002). In *Martin*, the plaintiffs were a group of individuals with varying disabilities,

including blind or visually impaired, wheelchair bound quadriplegics, and an individual with cerebral palsy who also required the use of a wheelchair.  *Id.* at 1364.  The plaintiffs sought injunctive relief against the mass transit system arguing that the transit system's failure to provide them with scheduling and route information in accessible formats violated the ADA.  *Id.* The system provided information through a telephone line and provided the schedules in Braille if requested through customer service.  *Id*. at 1365.  The transit system also had a website that provided individuals with extensive information on the routes and schedules, however, it was "not yet formatted in such a way that it is uniformly accessible to persons who are blind."  *Id*. at 1366.  There was further testimony that the transit system was "in the process of developing a plan to modify its web site so that route and scheduling information can be displayed in an alternative, plain text formal that is easily deciphered by text reader software."  *Id.*

The *Martin* court ultimately found that the information on the transit system's website was "not equally accessible to disabled persons, particularly the visually impaired."  *Id*. at 1377. The court further held that the transit system was "violating the ADA mandate of 'making adequate communications capacity available, through accessible formats and technology, to enable users to obtain information and schedule service.'"  *Id*. (citing 49 C.F.R. § 37.167(f)). Recognizing the transit system was taking steps to make the website accessible, the court directed the parties to confer and agree on an appropriate remedy that was narrowly tailored to address the ADA violations.  *Id*. at 1383.

Secretary Husted, relying on *Martin*, asserts that like the transit system, his office has already been implementing accessibility updates to his website and has worked with Plaintiffs to "identify and prioritize accessibility updates to the voter services pages of the website."  (Doc. 48, Resp. at 11).  In fact, Secretary Husted states in his brief, "[t]he Secretary has never

contended that certain accessibility barriers do not exist within the current framework of his website. To the contrary, the Secretary has voluntarily committed to remedying any such barriers by remediating its website to conform with WCAG 2.0 AA. The real issue here is that Plaintiffs want to control the Secretary's remediation process." (Doc. 48, Def.'s Resp. at 11, n. 6). And instead, the Secretary proposes that the relief, like that in Martin, should be narrowly tailored to address the ADA violation. Secretary Husted contends that if the Court finds that injunctive relief is warranted in this case, "such relief should be limited to requiring the Secretary's website conform to WCAG 2.0 AA." (Doc. 48, Def.'s Resp. at 11).

The Court finds that Plaintiffs have sufficiently established that Secretary Husted's website violates Title II of the ADA because it is not formatted in a way that is accessible to all individuals, especially blind individuals like the Individual Plaintiffs whose screen access software cannot be used on the website. Therefore, Plaintiffs have proven the first element for a permanent injunction, success on the merits of their ADA claim. The Court will next address the remaining elements for a permanent injunction and then discuss what relief is necessary.

**B.       Irreparable Injury**

Again, there is no dispute that continued denial of accessibility to the website would constitute irreparable injury. But there is a dispute as to how long the Individual Plaintiffs should have to be denied access. Plaintiffs urge this Court to order a very quick overhaul of the website, whereas Secretary Husted argues that Plaintiffs suggested timeframe is unduly burdensome and asserts that eighteen months would be adequate to finalize their plans for the website.

The Court finds that Plaintiffs have demonstrated sufficient irreparable injury if they are denied access to the website. The Court will consider timing arguments in the relief section below.

**C.      No Adequate Remedy at Law**

"Remedies available at law are inadequate to compensate for violation of an individual's civil rights."  *Nat'l Fed'n of the Blind v. Lamone*, No. 14-1631, 2014 WL 4388342, at *15 (D. Md. Sept. 4, 2014), *aff'd sub nom.* 813 F.3d 494 (4th Cir. 2016).  Plaintiffs argue, and the Court agrees, that "the only relief that will remedy Plaintiffs' injury is relief that will prevent its reoccurrence: an injunction requiring Secretary Husted to make his website available to Plaintiffs on equal terms."  (Doc. 47, Pls.' Mot. at 16).

**D.      Balance of Hardships**

Plaintiffs argue that the balance of hardships weighs heavily in favor of granting an injunction.  Plaintiffs assert that they will be at a severe disadvantage in accessing election information, including dates, candidates, and polling locations unless the website is made accessible using their screen access software.

Secretary Husted, however, has argued that it would essentially be a hardship to his office to have to comply with Plaintiffs' proposed injunctive relief and suggested timeframe for completion.

The Court is sympathetic to the arguments of both parties.  The Court is mindful of all the legal requirements Secretary Husted has to comply with in order to hire consultants, to obtain funding, and to purchase a new system.  Further, the Court appreciates the Secretary's efforts in working to make his website more accessible.  However, this case was filed in December of 2015, and the Court cannot allow for these Individual Plaintiffs and others similarly situated to continue to be denied access to very important information that individuals without these disabilities can access.  Therefore, the balance of hardships weighs in favor of granting a permanent injunction.

### E.  Public Interest

Congress stated in the enactment of the ADA that it is in the public interest to eliminate discrimination against individuals with disabilities.  *See* 42 U.S.C. § 12101.  In the context of injunctions, the Sixth Circuit has firmly held that "[t]he public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA."  *Jones v. City of Monroe*, 341 F.3d 474, 490 (6th Cir. 2003), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir.2012) (en banc); *accord Deck v. City of Toledo*, 29 F. Supp. 2d 431, 434 (N.D. Ohio 1998) (noting that "there is a significant public interest in eliminating discrimination against individuals with disabilities") (internal quotation marks omitted).  Therefore, the public interest favors injunctive relief to ensure that all individuals have access to the website.

However, the Secretary of State is a public elected official and funding for staffing and maintenance and improvements to his website comes from public tax dollars.  Therefore, although accessibility is clearly favored, it must be balanced by the fact that the public would most likely not want their taxes increased or used to pay exorbitant fees to have a process expedited that the Secretary was already in the process of completing in the ordinary course.

The Court will take these factors into account when issuing the injunctive relief below.

### F.  Injunctive Relief

Plaintiffs have submitted a nine-page proposed order outlining every aspect of the remediation plan the Secretary's office should take to make the website compliant, including hiring consultants approved by Plaintiffs, adopting policies approved by Plaintiffs, forming a committee for oversight, providing training, conducting performance review, conducting testing, and detailed reporting for five years, among other things.  Again, Secretary Husted does not disagree that the website is not accessible to all, but argues that any injunctive relief should be

fashioned like that in *Martin*, *i.e.* that it should be narrowly tailored to make it ADA compliant. Secretary Husted asserts that "the breadth of the peripheral relief Plaintiffs request serves as nothing more than a power grab that would give Plaintiffs unnecessary discretion over, and keep Plaintiffs unnecessarily involved in, the Secretary's operation of his office."  (Doc. 48, Def.'s Resp. at 11).

Further, Plaintiffs initially requested that such compliance be completed by March of 2017, but then amended that to September 8, 2017 (60 days before the November 2017 general election).  (Doc. 49, Pls.' Reply at 6, n. 4).  Defendants argued in response to the initial date that it was unduly burdensome based on staffing limitations, working within the State of Ohio's procurement and budgetary parameters, etc.  (Doc. 48, Def.'s Resp. at 13).  The Secretary's Office suggests that eighteen months is both a reasonable and necessary time frame in which to make the website fully compliant with WCAG 2.0 AA.  (*Id*. at 14).

The Secretary's office has identified the problem with the website—that the current CMS was not created to specifically address WCAG 2.0 AA and as such, prevents the Secretary's office from meeting the accessibility criteria.  (Doc. 48-1, Damschroder Supp. Aff. ¶¶ 5–7).  Therefore, the decision has been made to purchase a new CMS.  The RFP for this project was already scheduled to be posted.  (*Id.* at ¶ 8).  Once the CMS is created, the Secretary's three web designers will work with the selected vendor to transfer the current website content into the new CMS.  (*Id.* at ¶ 9).  Secretary Husted then plans to have the website tested before presented to the public.  (*Id*. at ¶ 10).  Despite setting forth the aforementioned plan to bring the website into compliance with WCAG 2.0 AA and stating that it is already in the process, Mr. Damschroder stated that "eighteen months would be a reasonable time period given the time needed to identify and contract with the appropriate vendors."  (*Id*. at 11).

This Court, like the court in *Martin*, recognizes and commends the Secretary's office for taking steps to correct this issue and make the website accessible to all. However, based on the Secretary's plan as set forth by Mr. Damschroder, Secretary Husted does not provide a sufficient explanation as to why the Secretary's office would need an additional eighteen months to complete this project. The Secretary's office began addressing these issues in 2015, and the process to purchase of the CMS has already begun. Therefore, the Court finds that a deadline of September 29, 2017, is adequate for the Secretary's office to make the website fully complaint, but still allow the Individual Plaintiffs the benefit of using the website in preparation for the November 7, 2017 general election.

As to the detailed plan of remediation proposed by Plaintiffs, the Court finds that it is not necessary to ensure the website is fully compliant. Secretary Husted has outlined a plan to purchase a new CMS and ultimately have all the website information transferred to it, which will make it compatible with the Individual Plaintiffs screen access software. Secretary Husted's office is obviously free to reach out to Plaintiffs through counsel if seeking suggestions, recommendations for consultants, or any other information that would expedite the remediation process. However, this Court will not order that certain steps toward remediation be approved by Plaintiffs. That is too overreaching and not narrowly tailored to accomplish the goal of making this website accessible to all. Further, the Court will not require continued oversight or reporting, but will order Secretary Husted to continue to make the website accessible to all. As updates are required, the Court encourages the Secretary to make those updates as expeditiously as possible so as not to deny anyone access to the website.

Therefore, after careful consideration of Plaintiffs' Motion for Permanent Injunction, Plaintiffs' Motion is **GRANTED IN PART**.  The Permanent Injunction issued in this case requires:

- Defendant, the Ohio Secretary of State, to make his website (http://www.sos.state.oh.us) accessible to all individuals, including the Individual Plaintiffs, including conforming with the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria and ensuring that all forms available on the website are capable of being electronically filled, saved, and submitted, and are offered in a format that is accessible across a wide spectrum of electronic devices, such as HTML.

- After the September 29, 2017 deadline for completion has passed, if Plaintiffs believe that any portion of this Order has been violated or the website is still not fully accessible, they shall give notice, including a detailed explanation of the particular violation, to Defendant, the Secretary of State.  Defendant must respond to such notice as soon as practicable, but no later than thirty (30) days thereafter.  The parties shall negotiate in good faith in an attempt to resolve any dispute relating thereto.  If the parties are unable to reach a mutually acceptable resolution, this Court will retain jurisdiction to allow Plaintiffs to seek to enforcement consistent with this Order.

2:15-cv-03061-GCS-KAJ Doc #: 50 Filed: 02/01/17 Page: 15 of 15 PAGEID #: 1246

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Permanent Injunction (Doc. 47) is **GRANTED IN PART**.

The initial Motion for Permanent Injunction (Doc. 25) is now **MOOT**.

The Clerk shall remove Documents 25 and 47 from the Court's pending motions list. The Clerk shall enter final judgment in this case in favor of Plaintiffs in accordance with the permanent injunction ordered above.

**IT IS SO ORDERED.**

> __*/s/ George C. Smith*_____
> **GEORGE C. SMITH, JUDGE**
> **UNITED STATES DISTRICT COURT**